FILED IN MY OFFICE
DISTRICT COURT CLERK
2/6/2013 4:02:39 PM
THERESA VALENCIA

THIRTEENTH DISTRICT COURT
COUNTY OF SANDOVAL
STATE OF NEW MEXICO

cm

DIANA WILLIS and
GEORGE WILLIS,

     Plaintiffs,

v.                      No.: D-1329-CV-2013-00356

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
GEICO GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GEICO CASUALTY COMPANY, BOB SMITH, KATHY BROWN,
DANIEL ULIBARRI, and BERKSHIRE HATHAWAY INC.,

     Defendants.

**COMPLAINT FOR UNDERINSURED MOTORIST COVERAGE BENEFITS, FOR
INSURANCE BAD FAITH, FOR BREACH OF NEW MEXICO INSURANCE CODE
AND NEW MEXICO UNFAIR TRADES PRACTICES ACT, FOR INJUNCTIVE
RELIEF, FOR DECLARATORY JUDGMENT AND RELATED CAUSES OF ACTION**

     COME NOW, Plaintiffs Diana Willis and George Willis, by and through their counsel,
and for their causes of action state as follows:

     1.     Plaintiffs Diana and George Willis are residents of Sandoval County.

     2.     On information and belief, tortfeasor Joshua Kiscadon is a resident of Otero
County, and was insured by GEICO with New Mexico's minimum coverage amount of
$25,000.00 per person.

     3.     On information and belief Government Employees Insurance Company, GEICO
General Insurance Company, GEICO Indemnity Company, and GEICO Casualty Company
(hereinafter collectively referred to as Defendants GEICO) are foreign corporations
headquartered in Maryland with their primary place of business in Washington, D.C., and at all

**EXHIBIT A**

times material hereto, were licensed to conduct the business of insurance in New Mexico and are, engaging in the business of insurance in the State of New Mexico.

4.    On information and belief Defendant Berkshire Hathaway Inc. (hereinafter referred to jointly with other Defendants as Defendants GEICO) is a holding company which oversees and manages subsidiary companies including the Defendants GEICO.

5.    Upon information and belief Defendant Bob Smith (hereinafter referred to with other defendants as Defendants GEICO) is a resident of Texas, and for all acts complained of herein, was acting in the course and scope of his employment with Defendants GEICO, as an adjuster licensed to adjust claims in New Mexico.

6.    Upon information and belief, Defendant Kathy Brown (hereinafter referred to with other defendants as Defendants GEICO) is a resident of Texas, and for all acts complained of herein, was acting in the course and scope of her employment with Defendants GEICO, as an adjuster licensed to adjust claims in New Mexico.

7.    Defendant Daniel Ulibarri is a resident of New Mexico and for all acts complained of herein, was acting in the course and scope of his duties as an agent, employee and attorney for Defendants GEICO.  The claims against Defendant Ulibarri are brought pursuant to *Martinez v. Cornejo*, 2009-NMCA-011, 146 N.M. 223, 208, P.3d 443, and to clarify that the prohibition in *Hovet v. Allstate Insurance Company*, 2004-NMSC-010, 135 N.M. 397, 89 P.3d 69 (2004) against suing attorneys defending third party liability claims does not apply to attorneys who are employees of an insurer providing first party insurance coverage.

8.    Defendants GEICO maintain a registered agent in the State of New Mexico, for service of process, the New Mexico Superintendent of Insurance, John Franchini.

2

9.      The Superintendent of Insurance is located in the County of Santa Fe, State of New Mexico and may accept service of process for Defendants GEICO at 1120 Paseo de Peralta in Santa Fe, New Mexico 87501.

10.     This action arises out of vehicular collision with an underinsured motorist and involves the uninsured/underinsured motorist ["UM/UIM"] insurance coverage available to the Plaintiffs pursuant to insurance policy number 2007083278, and the claims practices of Defendants GEICO.

11.     At all times material, Plaintiffs Diana and George Willis were insured by GEICO under a policy issued and purchased pursuant to a statutory mandate contained in the New Mexico Mandatory Financial Responsibility Act NMSA 1978 Section 66-5-201, et. seq, which policy provided uninsured and underinsured motorist coverage.

12.     The acts complained of herein occurred in the State of New Mexico.

13.     Jurisdiction and Venue are proper in this Court.

**General Allegations Pertinent to the Liability of the Underinsured Motorist**

14.     Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

15.     On or about May 15, 2010 Plaintiff Diana Willis was seriously injured in a vehicular collision involving a vehicle operated by Joshua Kiscadon.

16.     At all times material, Plaintiff Diana Willis was traveling west bound on 10th Street in Alamogordo, New Mexico.

17.     Tortfeasor Joshua Kiscadon had just shoplifted alcoholic beverages from Lowe's Grocery, located at 675 10th St. Alamogordo, NM 88310.  As he fled the scene of the theft he emerged from the parking lot at a high rate of speed, he swerved to avoid colliding with another

vehicle, in the process losing control of his vehicle, and striking Plaintiff Diana Willis' vehicle nearly head on.

18.     Kiscadon was operating the vehicle while intoxicated when he caused the collision with the Willis Vehicle.

19.     At the time of the accident Kiscadon was driving on a suspended license.

20.     The damage to the Willis' vehicle rendered it disabled.

21.     Tortfeasor Kiscadon fled the scene of the collision, wholly failing to stop and render aid to Mrs. Willis.

22.     Tortfeasor Kiscadon was arrested after causing several other collisions and charged with DWI, reckless driving, leaving the scene of an accident, and driving with a revoked/suspended license.

### Negligence of Kiscadon

23.     Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

24.     At the time and place of the collision, Kiscadon breached his duty to Plaintiffs and the driving public in the following manner, including, but not limited to:

a.     failing to keep a proper lookout and/or paying due attention to the roadway;

b.     operating his vehicle at an excessive rate of speed for conditions, and in excess of the posted speed limit;

c.     failing to exercise due care in operation of a motor vehicle;

d.     operating a vehicle without regard to the rights and safety of others, including Plaintiffs;

e.      operating a motor vehicle with a blood alcohol in excess of the legal presumption of intoxication;

f.      operating his vehicle in a willful, wanton and reckless manner;

g.      leaving the scene of an accident, and failing to render aid;

h.      violating laws of New Mexico and the City of Alamogordo; and

i.      other ways to be discovered pursuant to the New Mexico Rules of Civil Procedure.

25.     As a direct and proximate result of the negligence of Kiscadon, Plaintiff Diana Willis sustained serious and permanent bodily injury, resulting in damages in an amount to be proven at trial.

26.     As a direct and proximate result of the negligence of Kiscadon, Plaintiff Diana Willis has incurred medical expenses for treatment, therapy, and medicine for injuries sustained in this accident, which expenses will continue in the future, resulting in damages in an amount to be proven at trial.

27.     As a direct and proximate result of the negligent acts of Kiscadon, Plaintiff Diana Willis has endured pain and suffering, and will continue to endure pain and suffering in the future from her injuries, resulting in damages in an amount to be proven at trial.

28.     As a direct and proximate result of the negligence of Defendant Kiscadon, Plaintiff Diana Willis has experienced a diminishment of her ability to function normally in family, social, recreational and household activities causing Plaintiff Diana Willis a diminishment of the ability to maintain normal relationships and companionships, which will continue into the future resulting in damages in an amount to be proven at trial.

29.     As a direct and proximate result of the negligence of Kiscadon Plaintiff Diana Willis has been permanently scarred, resulting in damages in an amount to be proven at trial.

30.     At all times material George and Diana Willis were married.

31.     As a result of the conduct of Kiscadon, and the injuries sustained by Diana Willis, George Willis has suffered damages in the form of diminishment of normal marital relations and loss of household services.

32.     Plaintiffs contacted Kiscadon's insurer, GEICO and notified GEICO of the wreck.

33.     Plaintiffs demanded policy limits from GEICO, and GEICO paid Kiscadon's liability policy limits.

34.     Kiscadon was not the only person insured by GEICO.

35.     Before the automobile collision of May 15, 2010, Plaintiffs Diana and George Willis entered into an insurance contract with Defendants GEICO under GEICO automobile insurance policy, No. 2007083278.

36.     Plaintiffs paid the premiums for coverage and GEICO agreed to provide insurance coverage.

37.     At all times material hereto, Plaintiffs Diana and George Willis were insured under their GEICO policy.

38.     Unfortunately, GEICO did not provide plaintiffs with the correct amount of UM/UIM coverage under New Mexico law.

39.     On November 13, 2010, per request of counsel for Plaintiffs, Defendants GEICO agreed to reform the policy providing Uninsured/Underinsured motorists ("UM/UIM") coverage in the amounts of $100,000 per person for bodily injury, $300,000 per occurrence for bodily

injury, and $50,000 per occurrence for property damage (100/300/50 in UM/UIM limits) for each of the three vehicles owned by Plaintiffs.

40.     On December 15, 2011 Plaintiffs, through counsel, requested that GEICO confirm it would reform the uninsured/underinsured motorist coverage limits of the policy in conformance with New Mexico law.

41.     On December 19, 2011, GEICO confirmed in writing, with reference to its correspondence of November 13, 2010, that the policy limits had been reformed to conform with New Mexico law, providing total stacked limits of $300,000 per person, $900,000 per occurrence for bodily injury damages, and $150,000 per occurrence in property damage coverage (300/900/150 in stacked UM/UIM limits).

42.     GEICO is liable for damages which Plaintiffs would otherwise be entitled to recover from Kiscadon, an underinsured driver, pursuant to Plaintiffs' UM/UIM coverage under their policy of insurance with GEICO.

### Negligence Per Se of Kiscadon

43.     Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

44.     On information and belief, Kiscadon is guilty of negligence per se, due to his violation of New Mexico statute N.M.S.A. 66-8-102, et. seq. by operating a motor vehicle with a blood alcohol in excess of the legal presumption of intoxication, violation of New Mexico statute N.M.S.A. 66-5-39 by operating a motor vehicle when his privilege to do so was suspended or revoked, violation of New Mexico statute N.M.S.A 66-7-203 by failing to give information and render aid, violation of New Mexico statute N.M.S.A 66-7-201 by failing to stop his vehicle at the scene of the accident, violation of New Mexico statute N.M.S.A 66-7-301 by traveling at a

speed too great to allow him to be able to avoid colliding with another vehicle, violation of New Mexico statute N.M.S.A 66-8-113 by driving his vehicle carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, and violation of New Mexico statute N.M.S.A 66-8-114 by operating a vehicle upon a roadway without giving his full time and attention to the operation of the vehicle.

45.     New Mexico statutes §66-8-102, 66-5-39, 66-7-203, 66-7-201, 66-7-301, 6608-113, 66-8-114 et. seq. were enacted for the safety and well being of the public generally and Plaintiff Diana Willis specifically.

46.     As a direct and proximate result of the negligence per se of Kiscadon, Plaintiff Diana Willis sustained serious and permanent bodily injury, resulting in damages in an amount to be proven at trial.

47.     As a direct and proximate result of the negligence per se of Kiscadon, Plaintiffs have incurred medical expenses for treatment, therapy, and medicine for injuries sustained in this accident, which expenses will continue in the future, resulting in damages in an amount to be proven at trial.

48.     As a direct and proximate result of the negligence per se of Kiscadon, Plaintiff Diana Willis has endured pain and suffering, and will continue to endure pain and suffering in the future from her injuries, resulting in damages in an amount to be proven at trial.

49.     As a direct and proximate result of the negligence per se of Kiscadon, Plaintiff Diana Willis has experienced a diminishment of her ability to function normally in family, social, recreational and household activities causing Plaintiff a diminishment of the ability to maintain normal relationships and companionship, which will continue into the future resulting in damages in an amount to be proven at trial.

8

50. As a direct and proximate result of the negligence per se of Kiscadon, Plaintiff Diana Willis has been permanently scarred, resulting in damages in an amount to be proven at trial.

51. At all times material George and Diana Willis were married.

52. As a result of the conduct of Kiscadon, and the injuries sustained by Diana Willis, George Willis has suffered damages in the form of diminishment of normal marital relations and loss of household services.

53. GEICO is liable for damages which Plaintiffs would otherwise be entitled to recover from Kiscadon, an underinsured driver, pursuant to Plaintiffs' UM/UIM coverage under their policy of insurance with GEICO.

### Punitive Damages for Kiscadon's Conduct

54. Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

55. On information and belief, the conduct of Kiscadon in driving with a blood alcohol concentration in excess of the legal limit, or otherwise while driving while impaired, driving recklessly, leaving the scene of an accident, failing to stop to render aid after causing a collision resulting in great bodily harm was willful, reckless, wanton, intentional and done with knowledge that the acts and omissions were wrongful.

56. Kiscadon knew or should have known his conduct was willful, wanton, egregious and in reckless disregard of the rights and safety of the driving public particularly where Kiscadon was convicted of Aggravated DWI in both 2006 and 2008.

57. The described conduct of Kiscadon was done with reckless disregard or willful indifference for the rights and safety of others generally, and Plaintiffs specifically making

9

Kiscadon liable for punitive damages to punish his conduct and to deter others from the commission of like offenses.

58.     GEICO is liable for damages which Plaintiffs would otherwise be entitled to recover from Kiscadon, an underinsured driver, pursuant to Plaintiffs' UM/UIM coverage under their policy of insurance with GEICO, and New Mexico's Uninsured Motorist Act NMSA 1978 Sec. 66-5-301("UMA").

**General Allegations Pertinent to The Counts**
**Related To GEICO's Claims Practices**

59.     Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

60.     From February 8, 2011 forward GEICO was kept advised of Ms. Willis' medical status.

61.     Plaintiffs sustained property damage in the amount of $8,508.10.

62.     The property damage set forth in the preceding paragraph was caused by the negligence and reckless misconduct of the tortfeasor.

63.     In a letter from Stephen Simone dated July 28, 2010, GEICO Defendants acknowledged that tortfeasor Kiscadon was an uninsured motorist with respect to punitive damages for which he might be liable, but refused to tender a proportionate share of punitive damages related to property damage from the uninsured motorist property damage coverage.

64.     In the same correspondence GEICO also wrongfully asserted that it had no obligation to stack uninsured motorist property damage coverages, contrary to later representations in correspondence dated December 19, 2011, confirming $150,000 per occurrence in property damage coverage.

10

65.     On September 14, 2011 Plaintiffs, through counsel, provided GEICO Defendants with an adequate prognosis, and medical records pertinent to Ms. Willis' injuries, and requested (through Defendant Smith) that Defendants GEICO complete the evaluation of its insured's damages, and advise of its position.

66.     GEICO Defendants were advised that as a result of the negligence and reckless misconduct of the tortfeasor, Plaintiff Diana Willis had sustained medical bills through March 24, 2011 as follows:

    a.   Gerald Champion Regional Medical Center - $3,526.07

    b.   Rail Junction Emergency Physicians -  $825.00

    c.   X-Ray Associates of New Mexico - $697.00

    d.   Kirtland Air force Base - $164.00

    e.   Integrated Pain and Rehab - $1,910.80

    f.   Presbyterian Medical Group - $780

    g.   Radiology Associates of Albuquerque - $30

    h.   Clifford R. Stoller , MD - $304.23

67.     The medical charges set forth in the preceding paragraph were reasonable, necessary, and caused by the negligence and reckless misconduct of the tortfeasor.

68.     Defendants GEICO were advised that Plaintiff Diana Willis has had additional medical care following the submission of September 14, 2011 for ongoing symptoms.

69.     Ms. Willis after September 2011 through April 14, 2011, incurred additional medical costs as follows:

    a.   Presbyterian Medical Group - $271

70.     The medical charges set forth in the preceding paragraph were reasonable, necessary, and caused by the negligence and reckless misconduct of the tortfeasor.

71.     On September 29, 2011 GEICO Defendants, through Defendant Smith, confirmed receipt of the Plaintiff's demand letter as of September 16, 2011.

72.     On October 3, 2011 GEICO Defendants requested historical records of Ms. Willis for the preceding five years.

73.     On November 17, 2011 Plaintiff provided GEICO Defendants with five years of Ms. Willis' medical history, preceding the motor vehicle accident, in compliance with the request by Defendants for such information.

74.     On December 8, 2011 Plaintiff requested a status on GEICO Defendants' evaluation having received no update between November 17, 2011 and December 8, 2011.

75.     On December 9, 2011 GEICO Defendants made an initial offer of settlement in the amount of $22,122.65, taking into account an offset of $25,000 recovered from the underinsured tortfeasor's liability carrier, also GEICO.

76.     On December 15, 2011 Plaintiff, through counsel, rejected the offer of settlement and requested that GEICO Defendants consider the ongoing nature of her pain and suffering, and the punitive damages which were properly recoverable against Kiscadon.

77.     On December 19, 2011 GEICO Defendants, without regard to the correspondence of December 15, wrote asking why Plaintiff sought extra contractual damages, even though no such demand had been made Plaintiff or her counsel.

78.     On December 19, 2011 Plaintiff, through counsel, corresponded with GEICO Defendants reiterating her claim for damages, setting forth the same, and requesting GEICO confirm all damages were being considered in GEICO's offer of settlement.

79.     On December 23, 2011, GEICO Defendants, through Defendant Smith, confirmed that its offer included its evaluation of punitive damages relevant to the conduct of Kiscadon, and also advised that certain arthritic conditions noted in Ms. Willis' medical records pre-existed the accident, although they were not symptomatic until the accident.   In that correspondence Defendants offered settlement in the amount of $24,101.65 "in the spirit of compromise."

80.     On January 27, 2012 GEICO Defendants, through Defendant Bob Smith, spoke with counsel for Plaintiffs regarding GEICO's evaluation of damages.   Mr. Smith set out GEICO's evaluation of Mrs. Willis' actual damages, and advised that GEICO evaluated punitive damages at an amount of three times actual damages.  This conversation was memorialized in correspondence from Plaintiffs' counsel to GEICO Defendants on January 30, 2012.

81.     On February 3, 2012 Defendant Smith issued a letter setting forth GEICO's evaluation of Plaintiff's actual damages, confirmed the prior conversation about GEICO's evaluation of punitive damages, and made a new offer of settlement in the amount of $34,182.65. This offer included a damages evaluation for punitive damages.

82.     In the offer of February 3, 2012, and at no time prior, did GEICO Defendants include related property damage in its assessment of the proper measure of related punitive damages.

83.     On February 10, 2012, Plaintiffs, through counsel, sent a letter to GEICO memorializing an earlier phone conversation whereby GEICO confirmed that GEICO was calculating punitive damages at an amount of three times actual damages.  Plaintiffs explained that GEICO's offer of $34,182.65 did not factor in punitive damages for bodily injuries nor punitive damages for the property damages incurred.

13

84.     Plaintiffs' February 10, 2012 letter explained that while a punitive damages calculation of three times actuals was in itself unreasonably low, GEICO had not offered the amount as stated in its own evaluation. GEICO was attempting to negotiate settlement for less than the damages evaluated using its own evaluation.

85.     By GEICO's own calculation Plaintiff's bodily injury damages were $102,730.10. Plaintiffs explained that GEICO's calculation of bodily injury actual-damages was $25,682.65, and if GEICO had factored in its own ratio of three times actual damages in determining the punitive damages amount, the total amount of punitive damages would have been $77,047.45. Therefore, GEICO's own assessment, which was itself unreasonably low, should have resulted in GEICO making a bodily-injury settlement offer of $102,730.10 ($77,047.45 + $25,682.65 = $102,730.10), with GEICO owing $77,730.10 after the $25,000 offset referred to above.

86.     Plaintiffs further explained in their February 10 letter that GEICO's evaluation and offer also failed to account for property damages in its measure of punitive damages. Using GEICO's own assessment, GEICO's offer should have included an additional $21,750.00, which is GEICO's ratio of three times Plaintiff's property damages of $7,250. Because the $7,250 had already been paid by GEICO, GEICO should have included an additional $21,750.00 in its settlement offer, which would have brought its total settlement offer, by its own evaluation, to $124,480.10 (GEICO owing almost $100,000 after the $25,000 offset referred to above).

87.     The calculations described above, which were outlined in Plaintiffs' February 10 letter, were based on GEICO Defendants' unreasonably low, nominal evaluation of future pain and suffering in the amount of $1,500, its low evaluation of pain and suffering damages, and a minimal consideration of punitive damages for which Kiscadon would have been liable.

14

88.     GEICO Defendants provided an extremely conservative evaluation of damages, evaluated the punitive damages at the low end of the scale, and then offered Plaintiff Diana Willis only a fraction of the damages it believed were owed to her under its incomplete evaluation, approximately one third of the damages owed to Ms. Willis using GEICO's unreasonably low damage estimates and properly accounting for property damages.

89.     While Plaintiffs' February 10 letter asked GEICO to please correct any misunderstanding Plaintiffs may have had regarding GEICO's evaluation of the punitive damages exposure, GEICO never corrected or otherwise stated that there had been any misunderstanding of its assessment.

90.     GEICO never offered any reason for its failure to offer its insured what it perceived it owed under the UM/UIM coverage contract, nor justification for offering her only approximately one third of the amount it evaluated as due to Plaintiff.

91.     GEICO requested mediation, to which Plaintiffs agreed in correspondence dated February 10, 2012, but requested GEICO tender the amount of its conservative evaluation, agreeing that Plaintiffs' damages were at least the amount evaluated by GEICO.

92.     GEICO refused to tender payment for the amount it evaluated Mrs. Willis was entitled to recover under the Plaintiffs' uninsured/underinsured motorist contract, and provided no reason for such refusal.

93.     On information and belief, in one or more states outside of New Mexico, GEICO pays an insured's requests for payment of GEICO's evaluation of undisputed UM/UIM damages.

94.     On information and belief, GEICO has policies that refuse advance payments of undisputed benefits to insureds in New Mexico, or has arbitrary policies as to whether it will make advance payments of undisputed benefits to insureds in New Mexico."

95.     On March 2, 2012 Plaintiffs were advised through correspondence that Defendant Kathy Brown had taken over handling of the claims file.  Ms. Brown's correspondence asked about the status of GEICO's offer, apparently unfamiliar with Plaintiffs' correspondence of February 10, 2012.

96.     On March 16, 2012 Plaintiffs, through counsel, reminded Ms. Brown that they were still awaiting response from GEICO to their February 10, 2012 correspondence, and further advised of their willingness to continue negotiations between GEICO's evaluation of damages and Plaintiffs' evaluation, provided GEICO did not continue to delay payment of damages due under its own evaluation.

97.     GEICO Defendants ignored or refused the Willis' request that the undisputed minimum evaluation by GEICO be tendered to them without delay.

98.     On May 1, 2012 Plaintiffs provided additional medical documentation to GEICO Defendants advising of Diana Willis' ongoing symptoms and her likely need for a surgery, further demonstrating Defendants' early evaluation of future pain and suffering damages and future medical costs was inadequate.  Plaintiffs again requested payment without delay of the minimum amount of damages not in dispute, the amount of GEICO Defendants conservative, inadequate evaluation.

99.     Growing increasingly frustrated with GEICO's actions and inactions, Plaintiffs agreed to participate in mediation, even though GEICO did not pay its minimum evaluation of the case, so in July 2012 Plaintiffs, through counsel, agreed to mediation with Mark Mowery. GEICO Defendants, through Defendant Brown, did not acknowledge this communication until August 23, 2012.

16

100.     Despite being repeatedly advised of Mrs. Willis' ongoing injuries, and despite being provided with a note on May 1, 2012 indicating a potential need for surgery, Defendant Brown corresponded on September 21, 2012 asking if Mrs. Willis' injuries had resolved. By correspondence of September 24, 2012 Defendants were reminded of the information in their possession demonstrating Mrs. Willis' ongoing pain and suffering.  In this correspondence Defendants were again requested to provide a basis for GEICO's refusal to tender payment for the amount it had evaluated was due under the Willises' UM/UIM contract.

101.     By correspondence of September 25, 2012 Defendant Brown denied that GEICO's evaluation of damages represented an undisputed minimum value of damages, and failed to make payment in such amount, and refused to advise of the reason for such failure.

102.     By Correspondence dated September 27, 2012 Plaintiffs, through their counsel, requested that GEICO confirm that GEICO Defendants had not established a minimum value for the Plaintiff's damages, and further confirm that it had not completed its investigation and evaluation of Mrs. Willis' claim.

103.     By correspondence dated October 10, 2012 GEICO Defendants had referred claims handling in part to employee, agent and attorney Defendant Daniel Ulibarri. On that date Defendant Ulibarri advised that all information tendered to GEICO had been received and evaluated, but asked for any medical records or billings from August 2011 forward, re-requesting the same information GEICO had already been provided.

104.     In his correspondence of October 10, 2012 Defendant Ulibarri maintained GEICO's refusal to pay the damages it had evaluated, contending there was no undisputed minimum value, and relying on Arizona law in support of GEICO's position to withhold payment from its insured.

17

105.    On October 15, 2012, Plaintiffs, through counsel advised GEICO defendants, in correspondence addressed to Defendant Ulibarri, of the New Mexico Insurance Code provisions mandating prompt payment of undisputed portions of insurance claims, and of New Mexico and 10th Circuit cases supporting payment of undisputed minimum values, reminding GEICO of its fiduciary duties to its insureds.  Plaintiffs also noted Defendants policy of withholding payment of undisputed damages from insureds could only be for the economic detriment and coercion of insureds and the economic benefit of Defendants.

106.    Upon information and belief, insurers such as State Farm pay the minimum amount of their evaluated damages in First Party UM/UIM claims.

107.    Upon information and belief, in certain jurisdictions Defendants GEICO do not withhold payments of evaluated damages, and do not rely on out of state, inapplicable opinions in order to deny insureds prompt payment of evaluated damages.

108.    The parties participated in a mediation on October 19, 2012, with Attorney Mark Mowery acting as mediator.

109.    During the course of the mediation, GEICO ultimately made a final offer of settlement commensurate with its own lowball evaluation of the claim, approximately 13 months after being presented with Plaintiff's demand .

110.    At the mediation GEICO refused to consider payment of any amount beyond its original unreasonably low evaluation evaluation, excluding property damages from its assessment of the measure of punitive damages.

111.    Following the failed mediation GEICO, through its employee, agent and attorney, requested execution of a medical records authorization by Ms. Willis to enable it to obtain actual radiographic scans which were conducted months before the mediation.

112.   GEICO advised, for the first time, that the actual films or scans were necessary for complete evaluation of Ms. Willis' injuries and damages.

113.   At no time prior to the mediation had GEICO requested the execution of a medical release.

114.   At no time prior to the mediation had GEICO requested production of actual radiographic films/scans.

115.   GEICO's request for previously available information only after the mediation reflects that it failed to fully evaluate Ms. Willis' damages more than 29 months after the accident, and more than 12 months after all pertinent medical records had been provided to GEICO.

116.   GEICO's initial offer to its insured was only approximately 25% to 33% of its own evaluation of damages (see damages evaluation set forth in paragraphs 85 and 86 of this Complaint).

117.   GEICO's only basis for offering its insured less than the total damages which it calculated the insured had sustained was to attempt to settle its insured's claim for an amount less than the damages sustained by the insured.

118.   Offering the insured an amount less than its own calculation of the insured's damages reflects a conscious effort by the defendants to deprive the insured of the benefits of the policy contracted for and paid for by the insureds.

119.   After GEICO revealed its evaluation of Ms. Willis' damages, she requested, through counsel, that GEICO tender the amount of damages it calculated were sustained by Ms. Willis, while the parties continued to litigate or otherwise resolve the amount of damages in dispute – the difference between GEICO's evaluation and Plaintiffs' evaluation of damages.

120.    GEICO refused to tender payment for damages it has calculated were sustained, and owed to Ms. Willis, and has refused repeated requests for such payment to date.

121.    In withholding contractual benefits it has evaluated as being due to its insureds GEICO does not treat its insureds' interests equal to its own.

122.    GEICO is in a superior economic position compared to its insureds.

123.    In withholding contractual benefits from its insureds, in undervaluing insureds' damages GEICO has the benefit of using the money it withholds for its economic benefit, in particular for the economic benefit of Berkshire Hathaway, and deprives its insureds from using such money for their economic benefit.

124.    In undervaluing claims Defendants GEICO are able to reserve claims for less than full value, providing GEICO the use of monies which were not reserved for claims, allowing GEICO Defendants to make profit on the unreserved funds.

125.    In attempting to settle insured claims for less than its GEICO's own estimated value of damages, GEICO seeks to make additional profit for itself and Berkshire at the expense of, and in breach of its fiduciary duties to, its insureds.

126.    The practice of profiting from monies not paid for a pending claim, or profiting from unreserved funds, is well known to Defendants GEICO and its holding company Defendant Berkshire Hathaway.

127.    The practice of making additional profit from the underpayment of claims is also well known to GEICO.

128.    A significant asset of Berkshire Hathaway is the GEICO group of insurance companies.

129.    In a letter to Berkshire Hathaway shareholders, dated February 25, 2012, Chairman Warren Buffet advised:

> Our insurance companies continue their delivery of costless capital that funds a myriad of other opportunities.  This business produces "float" – money that doesn't belong to us, but that we get to invest for Berkshire's benefit.  And if we pay out less in losses and expenses than we receive in premiums, we additionally earn underwriting profit, meaning the float costs us less than nothing.  Though we are sure to have underwriting losses from time to time, we've now had nine consecutive years of underwriting profits, totaling $17 billion.  Over the same nine years our float increased from $41 billion to its current record of $70 billion.  Insurance has been good to us.

130.    GEICO increases its profitability, and the profitability of Berkshire Hathaway, by under-reserving claims in order to utilize money not set aside for pending claims, and by paying less than its estimated fair value for claims.

131.    Profiting from the float encourages GEICO Defendants to under-value insureds' claims, refuse payment of monies it assesses as owing, and to offer settlement in amounts less than it assesses are due to its insured, in order to pay less on the claim, or delay payment of the claim.

132.    GEICO either profits from paying less than is reasonable, or profits from "the float" when it delays payment of its own valuation of its insureds' damages, and under reserves a claim based upon unreasonably low valuations.

133.    Upon information and belief Defendants GEICO and Defendant Berkshire Hathaway are engaged in a civil conspiracy to violate New Mexico statutes prohibiting unfair claims practices, and to commit common law bad faith, for economic gain.

134.    As first party insureds, at all times relevant hereto, GEICO owed plaintiffs duties of honesty in all dealings.

135.   It is a violation of New Mexico law and improper for GEICO to in any way take advantage of Plaintiffs, or to attempt to take advantage of Plaintiffs.

136.   At all times Plaintiffs complied with all contractual obligations to cooperate with GEICO's investigation of the claim.

137.   At all times material Defendants' conduct detailed above was willful and represents a concerted effort to deny its insureds, the Plaintiffs, the full benefit of the contract of insurance, or delay payment of the benefits of the contract of insurance, to the detriment of the Plaintiffs.

**COUNT I**
**Claim for Uninsured Motorist Benefits**

138.   Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

139.   Plaintiffs are entitled to payment of uninsured/underinsured motorist benefits from Defendants GEICO for damages they would legally have been entitled to recover from Kiscadon. These damages include actual damages and punitive damages.

140.   Plaintiffs hereby request a determination of the amount of damages to which they would have been entitled to recover from Kiscadon, and which they are entitled to receive under the terms of the policy and New Mexico law.

**COUNT II**
**Violation of the Unfair Trade Practices Act**

141.   Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

142.   There was in effect at all times material a state statute commonly known as the New Mexico Unfair Trade Practices Act ("UPA"), NMSA 1978, Sections 57-12-1 to -22 (1967,

as amended), including but not limited to those subsections in Section 57-12-2(D)(7), (D)(15),

(D)(17) and Section 57-12-2(E), which prohibits a person selling insurance from engaging in

unfair or deceptive trade practices:

D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:

(7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;

...............

(15) stating that a transaction involves rights, remedies or obligations that it does not involve;

...............

(17) failure to deliver the quality or quantity of goods or services contracted for;

and

E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:

takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

results in a gross disparity between the value received by a person and the price paid.

143.    Defendants GEICO failed to deliver the quality or quantity of services contracted

for by Plaintiffs by failing to afford insurance benefits under the UM/UIM coverage of Plaintiffs'

policy.

144.    Defendants GEICO, acting through their agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices prohibited under Section 57-12-3, including but not limited to those subsections in Section 57-12-2(D)(7), (D)(15), (D)(17) and Section 57-12-2(E).

145.    Defendants GEICO's practices as described herein have resulted in damages to Plaintiffs in an amount to be proven at trial.

### COUNT III
### Violation of the Trade Practices and Frauds Act and the Insurance Code

146.    Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

147.    There was in effect at all times material a state statute commonly known in the Insurance Code as the Trade Practices and Frauds Act ("TPFA"), NMSA 1978, Sections 59A-16-1 through -30 (1984, as amended), including but not limited to NMSA 1978, Section 59A-16-20 (1997), subsections (A), (B), (C), (E), (G) and (N), which prohibits the following unfair claims practices:

A.    misrepresenting to insureds pertinent facts or policy provisions relating    to coverages at issue;

B.    failing to acknowledge and act reasonably promptly upon communication  with respect to claims from insureds arising under policies;

C.    failing to adopt and implement reasonable standards for the prompt investigation and processing of insured's claims arising under policies;

. . . . . . . . . . . .

E.    not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

. . . . . . . . . . . .

G.    compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by

24

such insureds when such have made claims for amounts reasonably similar to amounts ultimately recovered;

..............

N.    failing to promptly provide an insured with a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

148.    The actions of Defendants GEICO, as set forth above, constitute unfair insurance claims practices, knowingly committed or performed with such frequency as to indicate a general business practice prohibited by Section 59A-16-20, including but not limited to subsections (A), (B), (C), (E), (G) and (N).

149.    The actions of Defendants GEICO, as set forth above, constitute unfair insurance claims practices, knowingly committed or performed with such frequency as to indicate a general business practice prohibited by Section 59A-16-20, including but not limited to subsections (A), (B), (C), (E), (G) and (N).

150.    Defendants GEICO, as set forth above, knowingly and willfully, or with such frequency as to indicate its general business practice in this State, engaged in unfair insurance claims practices prohibited by NMSA 1978, Section 59A-5-26(C)(2)(a) and (b), where Defendant:

(a)    has without just cause failed to pay, or delayed payment of, claims arising under its policies, whether the claim is in favor of an insured or in favor of a third person with respect to the liability of an insured to such third person; or

(b)    without just cause compels insureds or claimants to accept less than amount due them or to employ attorney or to bring suit against the insurer or such an insured to secure full payment or settlement of a claim.

151.    Defendants GEICO's acts, omissions, policies and conduct in violating the New Mexico Trades Practices, Frauds Act, and the New Mexico Insurance Code has damaged Plaintiffs in an amount to be proven at trial.

## COUNT IV
### Insurance Bad Faith

152.    Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

153.    The actions of Defendants GEICO, as set forth above, constitute a denial and/or unreasonable delay in payment of uninsured motorist benefits.

154.    Defendants GEICO's denial and/or unreasonable delay were undertaken for reasons that were frivolous or unfounded.

155.    Additionally, Defendants GEICO, as set forth herein, have breached its duty to act honestly and in good faith in the performance of the insurance contract by failing to timely evaluate and pay Willis' claim.

156.    GEICO's conduct, as set forth herein, was undertaken in a willful, wanton and reckless manner.

## COUNT V
### Breach of the Implied Covenant of Good Faith and Fair Dealing

157.    Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

158.    In issuing insurance policies to Plaintiffs and adjusting claims Defendants GEICO has a duty to act in good faith and to treat its policyholders in a fair manner, to hold its insureds' interests and to act honestly, both in fact and in law in these dealings.

159.    In undertaking the wrongful acts described herein, Defendants GEICO has breached its duty of good faith and fair dealing, causing damage to Plaintiffs in an amount to be proven at trial, and warranting the imposition of punitive damages as permitted by law.

## COUNT VI

26

## Breach of Contract

160.    Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

161.    By issuing the policy at issue to Plaintiffs, Defendants GEICO entered into a contract with Plaintiffs.

162.    By engaging in the conduct alleged herein, Defendants GEICO breached its contractual obligations to Plaintiffs.

163.    Plaintiffs have complied with all conditions precedent to its contract with GEICO.

164.    Defendants GEICO's breach of its contractual obligations to Plaintiffs has damaged Plaintiffs in an amount to be proven at trial.

## COUNT VII
## Injunctive Relief

165.    Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein

166.    Plaintiffs are entitled to injunctive relief requiring that Defendants GEICO be enjoined from continuing practices that violate its duties as well as the contractual and legal obligations owed to the Plaintiffs.

167.    Defendants GEICO must be compelled to stop its practice of failing to make timely and fair offers of settlement, and failure to tender prompt payment of damages which it evaluates are the damages to which an insured is entitled to receive from an uninsured or underinsured motorist, and its practice of failing to hold its insureds' interests equal to its own.

168.    Defendants GEICO must stop the practice of utilizing first party insureds' premiums to hire staff attorneys to delay, defeat or discount claims of insureds, or to frustrate insureds' ability to obtain the benefits of the contract for which the premiums were paid.

169.    An attorney is only immune from suit for bad faith when the attorney provides the duties traditionally associated with possession of a law license, such as the handling of trial, arbitration, or an appeal.

## COUNT VIII
## Declaratory Judgment

170.    Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

171.    An actual controversy exists between the parties thereby rendering declaratory relief proper pursuant to Rule 1-057 NMRA and the New Mexico Declaratory Judgment Act, NMSA 1978, Sections 44-6-1 through -15 (1975).

172.    A certified copy of the policy at issue is attached hereto and incorporated by reference as EXHIBIT A.

173.    Plaintiffs are entitled to a declaratory judgment establishing the respective rights and obligations of the parties with respect to the claims set forth herein.

a.      Whether Defendants GEICO's acts and practices constitute a breach of its contractual obligations with respect to its policyholders;

b.      Whether Defendants GEICO's acts and practices have breached the implied covenant of good faith and fair dealing with respect to the policies issued to Plaintiffs;

c.      Whether Defendants GEICO's acts and practices violate Article 16 of the New Mexico Insurance Code;

d.     Whether Defendants GEICO's acts and practices constitute failure

to state a material fact in connection with the sale of its insurance

policies;

e.     Whether Defendants GEICO's acts and practices have

deceived or have had a tendency to deceive its policyholders:

f.     Whether Defendants GEICO's acts and practices have been

misleading or deceptive;

g.     The content, interpretation, and legal effect of Defendants GEICO's

standard policy forms and other standard form documents, insofar

as they relate to the acts and practices set forth above;

h.     The remedies available to Plaintiffs Willis should it be determined

that GEICO's acts and practices have violated its duties to its

New Mexico policyholders; and

## COUNT IX
## Punitive Damages

174.   Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

175.   Defendants GEICO's conduct described was willful, wanton and in reckless disregard of Plaintiffs' rights warranting the imposition of punitive damages in order to punish these defendants, and to deter these defendants and others from such conduct in the future.

## Count X
## Civil Conspiracy

176.   Plaintiffs Diana and George Willis incorporate by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

177.    In the conduct described above Defendants GEICO and Berkshire were engaged in a civil conspiracy to commit common law bad faith and to violate the insurance code and unfair trades practices statutes of the State of New Mexico, causing damage to the Plaintiffs as described herein, and are jointly and severally liable for the damages requested herein, including punitive damages, as may be awarded by the trier of fact.

WHEREFORE, as to Counts I, II, III, IV, V, VI, VII, VIII, VI, VII, VIII, IX Plaintiffs Diana and George Willis pray for judgment, injunctive, and declaratory relief as follows:

A.    Award Plaintiffs just compensation for damages reasonable to compensate them for their injuries and losses, including pain and suffering, medical bills and expenses, diminution in the enjoyment of life, loss of consortium, future pain and suffering, future medical bills, future diminution in the enjoyment of life, future loss of consortium, and punitive damages in an amount at which the Plaintiffs would have been entitled to be awarded for the actions of Joshua Kiscadon, an underinsured motorist.

B.    Awarding compensatory damages to Plaintiffs for the damages done to them by Defendants GEICO by its conduct described above, in an amount to be proven at trial;

C.    Awarding punitive damages to Plaintiffs in an amount sufficient to punish Defendants GEICO for their reckless, willful, and wanton conduct, and to deter them, and others similarly situated, from such conduct in the future in an amount to be proven at trial;

D.    Awarding Plaintiffs damages from Defendants GEICO as a result of their violations of Article 16 of the New Mexico Insurance Code, in an amount to be determined at trial;

30

E.      Awarding treble damages in accordance with NMSA 1978, Section 57-12-10(B) (2005), and any and all damages permitted pursuant to NMSA 1978, Section 57-12-1 through 26, which will deter Defendants GEICO and others from such unfair trade practices and wrongful conduct in the future and will punish them for the conduct set forth in this Complaint;

F.      Granting a declaratory judgment that will establish the rights and obligations of the parties with respect to the claims set forth herein and declaring that defendants were engaged in a civil conspiracy;

G.      Granting injunctive relief to enjoin Defendants GEICO from continuing to engage in those practices that violate its duties and contractual and legal obligations owed to the Plaintiffs Willis;

H.      Awarding the costs of this action,

I.      Awarding pre- and post-judgment interest,

J.      Awarding the Plaintiffs' costs and expenses including attorneys fees;

K.      Granting such other and further relief as the Court deems just and proper.

Respectfully Submitted By:

LAW OFFICES OF GEOFFREY R. ROMERO

By: _____
Geoffrey R. Romero, Esq.
4801 All Saints Road NW
Albuquerque, NM 87120
Phone: (505) 247-3338

The Vargas Law Firm, LLC
Ray M. Vargas, II
807 Silver Ave. SW
Albuquerque, NM 87102
Phone: (505) 242-1670

31

Martinez Hart & Thompson, P.C.
Bruce E. Thompson
1801 Rio Grande NW
Albuquerque, NM 87104
Phone:  (505) 343-1776

Carter & Valle Law Firm, P.C.
Richard J. Valle
Criostoir O'Cleireachain
Attorneys for Plaintiffs
8012 Pennsylvania Circle, NE
Albuquerque, NM  87110
(505) 888-4357
Attorneys for Plaintiffs