IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIANA WILLIS and
GEORGE WILLIS,

Plaintiffs,

v. 1:13-cv-00280-MCA-KBM

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
GEICO GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GEICO CASUALTY COMPANY, BOB SMITH, KATHY BROWN,
DANIEL ULIBARRI, and BERKSHIRE HATHAWAY INC.,

Defendants.

**PLAINTIFFS' RESPONSE TO BERKSHIRE HATHAWAY'S MOTION TO DISMISS**

As set forth herein, this Court could and should conclude that it has personal jurisdiction over Defendant Berkshire Hathaway. However, prior to reaching such a conclusion, this Court should decide whether it has subject matter jurisdiction over this action and Plaintiffs therefore request that their Motion to Remand be considered before the Court considers Berkshire Hathaway's Motion to Dismiss for lack of jurisdiction. If this Court concludes that it has subject matter jurisdiction, at the least, Plaintiffs should be allowed to conduct limited discovery on the question of defendant Berkshire Hathaway's minimum contacts with New Mexico sufficient to satisfy the Constitutional requirements of due process.

**A. Personal jurisdiction exists over an insurer contracting to insure any person, property or risk located within New Mexico at the time of contracting**

To obtain personal jurisdiction in a diversity action, Plaintiff must show that jurisdiction is legitimate under the laws of the forum state and the exercise of jurisdiction is consistent with

due process limitations. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). The relevant portions of the New Mexico long-arm statute provide that:

> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
> (1) the transaction of any business within this state;
> . . .
> (4) the contracting to insure any person, property or risk located within this state at the time of contracting;
> . . .
> C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

NMSA 1978 § 38-1-16.

Personal jurisdiction over Berkshire Hathaway is legitimate under New Mexico state law pursuant to Section 38-1-16(A)(4). Plaintiffs are citizens of New Mexico, and this case concerns extra-contractual claims for bad faith and related causes of action for claims handling associated with Plaintiffs' own insurance policy. Long before the events giving rise to this suit, New Mexico recognized that extra-contractual insurance claims are not limited to the parties issuing the insurance contracts. *Dellaira v. Farmers Insurance Exchange*, 2004—NMCA—132 ¶14 ("We do not see any sound reason why New Mexico should not permit pursuit of such a claim where, as is suggested by the pleadings, an entity related to or pursuant to agreement with the insurer issuing the policy has control over and makes the ultimate determination regarding the merits of an insured's claim."). As explained in *Dellaira,* when an entity related to the specific company issuing an insurance policy has control over payment of insurance claims, that entity is also liable for bad faith claims handling. *Id.*

Plaintiffs anticipate that Berkshire Hathaway will respond that it is not an insurer—it merely owns several insurers. This is a question of fact that should be resolved with limited and focused discovery. As explained herein, Berkshire Hathaway receives management reports from various GEICO entities. *See* pp. 6-7 herein. Berkshire Hathaway also promotes GEICO insurance and is likely paid for its marketing efforts. *See* p. 9.

Plaintiffs assert in their Complaint that Berkshire Hathaway has a practice of profiting from monies not paid for pending claims, or profiting from unreserved funds. *See* Complaint paragraphs 126-133. Where the Court's jurisdiction is contested, "[t]he allegations in the complaint **must be taken as true** to the extent they are uncontroverted by the defendant's affidavits[, and i]f the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal citations omitted and emphasis added); *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) ("[A]ll well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiffs' complaint" taken as true where personal jurisdiction is challenged.). The affidavit offered by Defendant does not deny that Berkshire Hathaway has a practice of profiting from monies not paid for pending claims, or profiting from unreserved funds. Defendant knows that such an assertion would be plainly false.

In a letter to Berkshire Hathaway shareholders, dated February 25, 2012, Chairman Warren Buffet advised:

> Our insurance companies continue their delivery of costless capital that funds a myriad of other opportunities. This business produces "float" – money that doesn't belong to us, but that we get to invest for Berkshire's benefit. And if we pay out less in losses and expenses than we receive in premiums, we additionally earn underwriting profit, meaning the float costs us less than nothing. Though we are sure to have underwriting losses from time to time, we've now had nine consecutive years of underwriting profits, totaling $17 billion. Over the same

> nine years our float increased from $41 billion to its current record of $70 billion. Insurance has been good to us.

*See* Exhibit 1, February 25, 2012 letter to Berkshire Hathaway shareholders, p. 4, attached hereto. Berkshire Hathaway notes in this same letter that its results in increasing "float" are contrary to the insurance industry.

> Let me emphasize once again that cost-free float is not an outcome to be expected for the P/C industry as a whole: We don't think there is much "Berkshire-quality" float existing in the insurance world.

Exhibit 1 at p. 8. In other words, Berkshire is squeezing claims payments so it can have money to invest at no cost. "**Our** low costs permit low prices." Exhibit 1 at p. 9 (emphasis added). With this statement, Berkshire Hathaway takes ownership of GEICO's claims practices. Claims payments are the largest variable costs for an insurer.

Low costs can only result from low claim payments. Berkshire Hathaway increases its profitability, and the profitability of GEICO by utilizing money set aside, but not yet paid for pending claims. Berkshire specifically identifies itself as interrelated in its insurance and claims handling businesses... **"we get to invest"...."we pay out less"...."we earn underwriting profit"...."we are sure to have underwriting losses from time to time"..."we've now had nine consecutive years of underwriting profits"**. *Id.*

In other portions of this letter, Berkshire Hathaway engages in direct marketing activities for GEICO.

> GEICO will have a booth staffed by a number of its top counselors from around the country, all of them ready to supply you with auto insurance quotes. In most cases, GEICO will be able to give you a shareholder discount (usually 8%). This special offer is permitted by 44 of the 51 jurisdictions in which we operate. (One supplemental point: The discount is not additive if you qualify for another, such as that given certain groups.) Bring the details of your existing insurance and check out **whether we can save you money**. For at least half of you, I believe **we** can.

Exhibit 1 at p. 20 (emphasis added). Once again, Berkshire Hathaway is taking ownership of GEICO's claims practices. These are by no means isolated examples. Similar statements exist in the 2011 and 2013 shareholder letters. *See* Exhibits 2 and 3 attached hereto.

New Mexico state courts have not interpreted Section 38-1-16(A)(4). However, the Supreme Court of New Mexico has deemed Illinois cases on long-arm jurisdiction as persuasive authority because the New Mexico long-arm statute was adopted directly from Illinois. *Customwood Mfg., Inc. v. Downey Constr. Co., Inc.*, 691 P.2d 57, 59 (N.M. 1984); *Blount v. TD Publishing Corp.*, 423 P.2d 421, 425 (N.M. 1966). The Illinois Appellate Court determined that the subsection of the Illinois long-arm statute permitting the exercise of jurisdiction over a party contracting to insure any person, property or risk located within the state at the time of contracting was intended to facilitate the state's interest in regulating the insurance industry. *Kerr v. Conrail*, 430 N.E.2d 627, 630 (Ill. App. 1981). The court noted that, at the time the statutory provision was adopted, the Illinois legislature expressed concern that residents of Illinois holding insurance policies with companies not authorized to do business in Illinois often had great difficulty enforcing their legal rights under such policies because they could not obtain personal jurisdiction in Illinois. *Id.* The United States Supreme Court recognized that a similar statute in California was intended to permit suit in a California court against a foreign insurance company when the insurance company had an insurance contract with a California resident. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957).

For these reasons, to the extent Berkshire Hathaway exerts control over GEICO insurance claims, the New Mexico courts may exert jurisdiction over Berkshire Hathaway. At this time there has not been a sufficient development of facts to allow determination of this issue.

**B. Plaintiffs are entitled to discovery on the control exerted by Berkshire Hathaway over GEICO claims.**

When issues arise as to jurisdiction, discovery should be made available on factual issues raised with regard to jurisdiction. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978). A refusal to grant discovery is an abuse of discretion if the denial results in prejudice to a litigant. *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320 (10th Cir. 2002).

In support of its motion to dismiss, Defendant attached to its memorandum brief a declaration by Berkshire Hathaway's corporate secretary, Forrest Krutter. *See* Doc. No. 24-1. Mr. Krutter also asserts that: "Berkshire Hathaway does not exercise day-to-day control or management of the operations of any of the GEICO Defendants. Nor is Berkshire Hathaway involved in the daily business activities of the GEICO Defendants." Doc. No. 24-1 p. 2.

Contrary to this assertion, Berkshire Hathaway has produced in other lawsuits more than 1,000 pages of quarterly reports and semi-annual presentations pertaining to "cost containment efforts," and bill processing systems, and financial aspects of claim handling that it receives from various GEICO entities. *See Johnson v. Geico Cas. Co.*, 269 F.R.D. 406, 417-418 (D. Del. 2010). If Berkshire Hathaway had no involvement in the operations of any of the GEICO entities, it would not have any need for reports on "cost containment." The subjects of these reports suggest that Berkshire Hathaway is not a passive owner collecting profits or sustaining losses, but that it has an active interest in the operations of various GEICO entities. The *Johnson* Court ordered the production of "monthly and quarterly reports provided to Berkshire and semi-annual and annual presentations made to Berkshire." *Id.* at p. 418.

Defense counsel in *Johnson* affirmatively represented to plaintiffs' counsel that there were no management reports, when in fact GEICO was submitting management reports to Berkshire Hathaway. *Id.* In depositions of Defendants' 30(b)(6) witnesses, Defendants' counsel

repeatedly represented that "there are no management reports." Defendants contended that these statements were limited only to management reports concerning the monitoring of PIP claims and cost containment measures relating to PIP claims, as that was a noticed topic of the depositions. The *Johnson* court did not find that distinction persuasive. *Id.* In light of another, Federal district court questioning assertions by Berkshire Hathaway's counsel, Plaintiffs should be given limited discovery.

Contrary to the assertions of Berkshire Hathaway that it does not do business in New Mexico, it has at least one well known contact with New Mexico. In late March of 2013, the CEO of Berkshire Hathaway, Warren Buffet, traveled to New Mexico and filmed a comedy segment for Berkshire Hathaway investor's conference on location at *Breaking Bad*'s New Mexico-based set. *See* Exhibit 4, articled printed at http://www.businessinsider.com/breaking-bad-skit-at-berkshire-meeting-2013-5.

Berkshire Hathaway then played this video, filmed in New Mexico, at its annual shareholder's meeting. *See* Exhibit 4. Plaintiffs do not know how much Berkshire Hathaway paid for the video, or the amount of time or resources Berkshire Hathaway spent in New Mexico. Also unknown is whether while in New Mexico, Mr. Buffet conducted other business on behalf of Berkshire Hathaway. It is unknown whether Mr. Buffett or other Berkshire Hathaway employees traveling with him, if any, conducted any business meetings, placed any telephone calls or met with anyone on behalf of Berkshire Hathaway while in New Mexico. It was; however, important enough that the video be filmed on location in New Mexico with both lead actors from the show in the video. It is also highly likely that all expenses associated with this video were deducted as a business expense of Berkshire Hathaway.

In *Dudnikov*, 514 F.3d at 1070-71, the Tenth Circuit noted the distinction between tort claims and contract claims in jurisdictional analyses. In the tort context, the question is usually whether the nonresident defendant "purposefully directed" its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant "purposefully availed" itself of the privilege of conducting activities or consummating a transaction in the forum state. In all events, the shared aim of "purposeful direction" doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state. 514 F.3d at 1071.

Discovery of the management reports, on the other hand will show if New Mexico and its insureds were one of many 'focal point[s] of the tort.'" *Id.* at 1075 n. 9. If the cost containment and other reports are directed at artificially lowering claims payments, this is a New Mexico tort.

When the Court rules on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). Under this standard, Plaintiff bears the burden of "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over" Defendants. *Id.* "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In other words, "*in the preliminary stages of litigation, the plaintiff's burden is light.*" *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir.1992) (emphasis added).

Discovery of jurisdictional facts is permitted when plaintiff demonstrates that it can supplement its jurisdictional allegations through discovery. *Trintec Indus. v. Pedre Promotional Prods.*, 395 F. 3d 1275, 1283 (5th Cir. 2005). Plaintiffs respectfully request that they be allowed to conduct discovery on the limited issue of personal jurisdiction, including Rule 30 (B) (6) depositions duces tecum of Berkshire Hathaway on the narrow issue of personal jurisdiction. *See* Fed R. Civ. Pro. 30 (B) (6).The exact discovery requested is listed in Exhibit 5 attached hereto.

Plaintiffs respectfully request that the Court allow them to supplement their response to Defendant's motion to dismiss within fifteen (15) days after the limited jurisdictional discovery is completed. This will allow Plaintiffs an opportunity to show the Court necessary jurisdictional facts.

**C. Numerous Berkshire Hathaway businesses operate in New Mexico and some of these actively market their affiliation with Berkshire Hathaway**

As previously indicated, Berkshire Hathaway engages in direct marketing for GEICO. On its webpage, GEICO markets an affiliate advertising program:

> With GEICO's Affiliate Program, you can place GEICO links on your website and earn money for each visitor from your site that gets a car or motorcycle insurance quote at GEICO.com.

Exhibit 6 attached hereto. GEICO pays between $6 and $10 depending on volume for each visitor from a private website that gets a car insurance quote at GEICO.com. Exhibit 6. Berkshire Hathaway has a GEICO button on its website allowing a click through directly to the GEICO website. *See* Exhibit 7 attached hereto. GEICO has the means of tracking these referrals, and discovery will show how many New Mexico policies have been purchased through the Berkshire Hathaway website. Likewise, GEICO also offers discounts to Berkshire Hathaway stockholders for GEICO insurance. Exhibit 1 at p. 20.

Other New Mexico businesses act much the same. *See* Exhibit 8, December 2012 Rio Grande Press release ("I am extremely excited that Rio Grande will be moving forward with Berkshire Hathaway, working with the folks at the Richline Group"). Plaintiff is not arguing for piercing the corporate veil, but that Berkshire Hathaway does business in New Mexico when local, New Mexico businesses market themselves with their Berkshire Hathaway connection. *See* Exhibit 8.

Berkshire Hathaway transacts business through a number of other businesses. *See* Exhibit 9 attached hereto. Berkshire Hathaway's CEO, Mr. Warren Buffett, is on the board of directors for at least two of these companies, and these companies have agents for service of process in New Mexico. *See* Exhibit 10, See's Candy Shops, and Exhibit 11, Cort Business Services Corporation.

There are a number of collective facts that support personal jurisdiction, or at the least discovery on the issue of personal jurisdiction. Berkshire Hathaway receives management reports from GEICO. Berkshire Hathaway uses GEICO's funds obtained from low claims payments to increase its own profits. GEICO's lower claims payments are an anomaly in the insurance industry, and Berkshire Hathaway boasts about this on various letters to stockholders. Berkshire Hathaway filmed a video in New Mexico and played that video at its annual stockholder's meeting. Other corporations based in New Mexico market their affiliation with Berkshire Hathaway. Berkshire Hathaway directly markets GEICO insurance, and, if GEICO treats Berkshire Hathaway like other corporations, Berkshire Hathaway gets paid by GEICO for its marketing. Plaintiffs request that Berkshire Hathaway's motion be denied.

**WHEREFORE,** Plaintiffs respectfully requests that the Court allow limited discovery on the issue of personal jurisdiction and that they be given until fifteen (15) days after the

completion of such discovery to file a supplemental response to Defendant's motion to dismiss, and for such other relief as would be just.

Respectfully Submitted By:

**CARTER & VALLE LAW FIRM, P.C.**

/s/ Richard J. Valle
Richard J. Valle
Criostoir O'Cleireachain
Attorneys for Plaintiffs
8012 Pennsylvania Circle, NE
Albuquerque, NM 87110
(505) 888-4357

The Vargas Law Firm, LLC
Ray M. Vargas, II
807 Silver Ave. SW
Albuquerque, NM 87102
Phone: (505) 242-1670

Martinez Hart & Thompson, P.C.
Bruce E. Thompson
1801 Rio Grande NW
Albuquerque, New Mexico 87104
505/343-1776

Law Offices of Geoffrey R. Romero
Geoffrey R. Romero, Esq.
4801 All Saints Road NW
Albuquerque, NM 87120
Phone: (505) 247-3338
Fax: (505) 271-1539

Attorneys for Plaintiffs

I hereby affirm that on today, August 16, 2013, a copy of this document was served on all counsel of record via the court's electronic filing system.

/s/ Richard J. Valle
Richard J. Valle