IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIANA WILLIS and
GEORGE WILLIS,

    Plaintiffs,

vs.                                                         Civ. No. 13-280 KG/KK

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
GEICO GENERAL INSURANCE COMPANY,
BOB SMITH, KATHY BROWN,
DANIEL ULIBARRI, and BERKSHIRE HATHAWAY, INC.,

    Defendants.

MEMORANDUM OPINION AND ORDER

       This matter comes before the Court upon Defendant Berkshire Hathaways' Motion to Dismiss and memorandum in support, both filed on July 24, 2013 (collectively, Motion to Dismiss). (Docs. 23 and 24). Defendant Berkshire Hathaway, Inc. (Berkshire) moves to dismiss Plaintiffs' claims against it under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Plaintiffs filed a response on August 16, 2013, opposing the Motion to Dismiss, and, in the alterative, seeking limited jurisdictional discovery. (Doc. 41). Berkshire filed a reply on September 13, 2013, and opposes jurisdictional discovery. (Doc. 52). Having reviewed the Motion to Dismiss and the accompanying briefs and exhibits, the Court denies the Motion to Dismiss without prejudice and allows Plaintiffs to engage in limited jurisdictional discovery.

A. *Background*

       *1. The Complaint (Doc. 1-1)*

       This lawsuit arises from a vehicular collision involving an underinsured motorist insurance claim under Plaintiffs' GEICO automobile insurance policy. Plaintiffs bring this

lawsuit against GEICO insurance companies, GEICO adjusters, and a GEICO agent[1] for undervaluing Plaintiffs' damages claims and delaying payment of those claims.[2] Plaintiffs also bring a civil conspiracy claim against Berkshire, the owner of the GEICO insurance companies. Plaintiffs allege that GEICO engages in a practice of undervaluing insureds' damages claims and delaying payment of claims in order to increase profits for Berkshire and the GEICO insurance companies. (Doc. 1-1) at ¶¶ 123-33.

   2. *Personal Jurisdiction Evidence*

Forrest N. Krutter, Berkshire's secretary, attested to the following facts concerning Berkshire's contacts with New Mexico and this case:

- Berkshire is incorporated in Delaware and has its principal place of business in Nebraska;

- Berkshire is a holding company and indirect parent company of the GEICO companies;

- Berkshire does not have an office in New Mexico nor does it own, use, possess, or lease any New Mexico real property or facilities;

- Berkshire does not have any personal property in New Mexico;

- Berkshire does not have any employees, officers, or agents in New Mexico;

- Berkshire does not have a registered agent for service of process in New Mexico;

- Berkshire does not sell insurance or conduct business in New Mexico, nor is it authorized or licensed to do business in New Mexico;

- Berkshire does not exercise day-to-day control or management over GEICO;

---

[1] Plaintiffs voluntarily dismissed without prejudice their claims against GEICO Indemnity Company and GEICO Casualty Company. (Doc. 47).

[2] The Court notes that Plaintiffs agreed to dismiss with prejudice the underinsured motorist coverage claim, but Plaintiffs continue to assert the extra-contractual claims not affected by that dismissal. (Doc. 146).

- Berkshire is a separate legal entity from the GEICO companies in that the GEICO companies are incorporated in Maryland, their principal place of business is in Maryland, they do not share any buildings with Berkshire, they have separate boards of directors and employees, and they have separate assets;

- Berkshire did not employ the individual Defendants in this case nor are they agents for Berkshire;

- Berkshire was not involved in the sale of the insurance policy at issue and has no knowledge of how GEICO handled Plaintiffs' claim; and

- Berkshire is not engaged in a civil conspiracy with GEICO to harm Plaintiffs.

(Doc. 24-1).

Plaintiffs, on the other hand, produced the 2011, 2012, and 2013 Berkshire reports to its shareholders which Berkshire distributes at the annual stockholders meeting in Nebraska. *See* (Doc. 52) at 8 (reports to stockholders distributed at annual stockholders meeting in Nebraska). The 2011 and 2012 reports explain that when insurance companies "receive premiums upfront and pay claims later" insurance companies end up "holding large sums" of money called "float." (Doc. 41-1) at 7; (Doc. 41-2) at 6.  Those reports note that Berkshire's insurance companies deliver "float" to Berkshire which Berkshire then invests for its benefit. *Id.*  The reports emphasize that "cost-free float is *not* an outcome to be expected for the [property/casualty] industry as a whole…." (Doc. 41-1) at 7; (Doc. 41-2) at 7.  The 2011 and 2012 reports further note an underwriting profit from the GEICO companies as a result of premiums exceeding expenses and losses. (Doc. 41-1) at 7; (Doc. 41-2) at 6.  Berkshire adds the underwriting profit "to the investment income our float produces." *Id.*  Moreover, the 2011, 2012, and 2013 reports state that stockholders can get auto insurance quotes, including discounted quotes, from GEICO staff at the annual Nebraska stockholders meeting. (Doc. 41-1) at 19; (Doc. 41-2) at 8.  Finally, the 2011 and 2013 Berkshire reports provide a GEICO phone number and website address.

(Doc. 41-2) at 5; (Doc. 41-3) at 3-4. In fact, the Berkshire website has a hyperlink to the GEICO website as well as a GEICO phone number for car insurance quotes. (Doc. 41-7).

Furthermore, Plaintiffs produced a page from the GEICO website promoting the GEICO Affiliate Program in which businesses earn money when they link their websites to GEICO's website and the visitors from the businesses' websites obtain car insurance quotes. (Doc. 41-6).

Plaintiffs also observe that Warren Buffett, Berkshire's chairman of the board, came to New Mexico in 2013 to film a comedy skit for Berkshire's investor's conference. (Doc. 41-4). Moreover, Plaintiffs present a press release announcing that a New Mexico jewelry supply company, Rio Grande, joined the Richline Group, a Berkshire company. (Doc. 41-8). Finally, Plaintiffs present evidence that two other New Mexico companies, CORT Business Services and See's Candies, are listed as Berkshire companies with Warren Buffett as their directors. (Docs. 41-9 and 41-10).

*3. Plaintiffs' Requested Jurisdictional Discovery*

Plaintiffs request that Berkshire produce the following documents regarding general personal jurisdiction:

A. All monthly and quarterly reports provided to Berkshire and semi-annual and annual presentations made to Berkshire Hathaway from 2009 to the present by any GEICO entity concerning automobile insurance policies or claims handling of auto claims.

B. Documents showing any expenses or costs associated with work or activities done in New Mexico.

C. Records of any payments made by Berkshire Hathaway to any person, corporation, company, entity, or business in New Mexico for the past five (5) years.

D. Any agreements, contracts, work orders, or other documents evidencing a legal relationship or business transaction with any person, corporation, company, entity, or business in New Mexico for the past five (5) years.

      E.      Documents showing any efforts by Berkshire Hathaway directed at cost containment or reducing the amount of GEICO insurance claims payments.

(Doc. 41-5) at ¶ 3.  Plaintiffs also seek a deposition *duces tecum* for

      A.      All monthly and quarterly reports provided to Berkshire and semi-annual and annual presentations made to Berkshire Hathaway from 2009 to the present by any GEICO entity concerning automobile insurance policies or claims handling of auto claims.

      B.      Documents showing any work, meetings, conferences, telephone calls or other activities concerning Berkshire Hathaway or by any Berkshire Hathaway employees, officers, or board members in New Mexico.

*Id.* at ¶ 4.

B. Discussion

    *1. Personal Jurisdiction*

Federal courts sitting in diversity have personal jurisdiction over non-resident defendants to the extent permitted by the law of the forum, in this case, New Mexico.  *Benally v. Amon Carter Museum of Western Art*, 858 F.2d 618, 621 (10th Cir. 1988) (citations omitted).  The parties may present affidavits, depositions, answers to interrogatories, and similar evidentiary matters on a motion attacking jurisdiction, which the Court freely considers.  *See Sunwest Silver, Inc., v. Int'l Connection, Inc.*, 4 F.Supp.2d 1284, 1285 (D.N.M. 1998); *Jones v. 3M Company*, 107 F.R.D. 202, 204 (D.N.M. 1984).  The plaintiff has the burden of establishing personal jurisdiction over the defendant.  *See Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir.1996).

The Tenth Circuit has explained that when a court decides a Rule "12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

To make this *prima facie* showing, the plaintiff must "demonstrat[e], via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* To overcome "a plaintiff's *prima facie* showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (citation omitted).

New Mexico applies a three-part test to determine whether personal jurisdiction lies over non-resident defendants. The Court must determine whether: (1) the defendant committed an act or omission specifically set forth in New Mexico's long-arm statute; (2) the cause of action arises out of that act or omission; and (3) the defendant has sufficient minimum contacts to satisfy due process concerns. *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 2002-NMSC-018, ¶ 8, 132 N.M. 312. However, "'[t]he first and third step of this test have been repeatedly equated with the due process standard of minimum contacts,' removing the necessity of a technical determination of whether the non-resident committed an act enumerated by the long-arm statute." *Alto Eldorado Partnership v. Amrep*, 2005-NMCA-131, ¶ 30, 138 N.M. 607 (quoting *Santa Fe Techs., Inc. v. Argus Networks, Inc.,* 2002–NMCA–030, ¶ 13, 131 N.M. 772 (internal quotation marks and citation omitted)). Hence, courts focus on the defendant's minimum contacts with New Mexico and the second step of the test. *Id.* at ¶¶ 30 and 36.

Minimum contacts with the forum state may be established through either general or specific jurisdiction. Both general and specific personal jurisdiction require a showing that the exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice." *Id.* at ¶31. Here, Plaintiffs claim that the Court has general personal jurisdiction over Berkshire.

General jurisdiction requires a plaintiff to demonstrate that a defendant's contacts with the forum state are so pervasive as to confer personal jurisdiction by the continuous and

systematic nature of the defendant's in-state activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523,1532-33 (10th Cir. 1996). In other words, the defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also Rosenberg v. Deutsche Bank AG*, 2012 WL 1963356 (D. Colo.). Generally, a corporation is "at home" in the forum state when the state forum is the entity's domicile, place of incorporation, or principal place of business. *See Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2853-54 (citation omitted). In assessing a corporation's contacts with a forum state, courts also consider the following factors: "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements . . . or bank accounts; and (4) the volume of business conducted in the state." *Trierweiler*, 90 F.3d at 1533 (citing 4 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1069, at 348-55 (2d ed. 1987) (citing cases)).

Plaintiffs contend that Berkshire solicits business in New Mexico by engaging in direct marketing for GEICO, which sells insurance policies in New Mexico. Plaintiffs maintain that this direct marketing consists of Berkshire (1) offering GEICO discounts to its stockholders at the annual stockholders meeting, (2) providing the GEICO website and phone number in its reports to stockholders, (3) participating in the GEICO Affiliate Program, and (4) providing a GEICO hyperlink and phone number on the Berkshire website.

Berkshire correctly notes that GEICO provides quotes at the annual stockholders meeting in Nebraska, not in New Mexico. Berkshire also notes that it distributes the annual reports with GEICO contact information to stockholders at the annual stockholders meeting in Nebraska. (Doc. 52) at 8. Those actions do not constitute solicitation of business in New Mexico nor do they show that Berkshire holds itself out as doing business in New Mexico.

With respect to Berkshire's participation in the GEICO Affiliate Program and the Berkshire website's hyperlink to GEICO and its listing of a GEICO phone number, the Tenth Circuit has recognized that general personal jurisdiction may sometimes be exercised over a business due to its website. *See Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1296 (10th Cir.1999) (quoting *Patriot Systems, Inc. v. C–Cubed Corp.,* 21 F.Supp.2d 1318, 1323–24 (D. Utah 1998)). The Tenth Circuit classifies websites in three general categories: (1) business websites, i.e., those websites which require "the knowing and repeated transmission of computer files over the Internet," (2) passive websites, i.e., those websites that simply post information, and (3) interactive websites, i.e., those websites "where a user can exchange information with the host computer." *Id.* (citations and internal quotation marks omitted). To decide, "[w]hether the exercise of jurisdiction is appropriate depends upon 'the level of interactivity and the commercial nature of the exchange of information that occurs on the Web site.'" *Id.* (citation omitted).

In this case, the GEICO hyperlink as well as the posting of GEICO's phone number on the Berkshire website provide little more than passive information to those who might be interested in contacting GEICO. Significantly, potential insurers cannot purchase insurance policies through the Berkshire website, they must contact GEICO to do so. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) (website passive where website provides

electronic mail access, printable order form, and toll-free phone number but does not allow consumers to order products or services on-line).  In addition, the fact that GEICO pays Berkshire for website referrals obtained throughout the nation, if not the world, simply does not demonstrate sufficient continuous and systematic contacts with New Mexico so that Berkshire would be deemed "at home" in New Mexico.  *See Rocke v. Pebble Beach Co.*, 2014 WL 1725366, at *7 (E.D. Pa.) (where advertiser pays Google for each internet user "click" on advertiser's link with intent to reach customers around the world, plaintiff fails to show that advertiser has continuous and systematic contact with particular forum state); *Rescuecom Corp. v. Hyams*, 477 F.Supp.2d 522, 529-30 (N.D. N.Y. 2006) (where website link targets national audience and does not offer anything for sale, linked site was essentially informational, even if defendant earned a commission from sales on linked site).  Berkshire's website, therefore, does not provide a basis for general personal jurisdiction.

Next, Plaintiffs contend that Berkshire has minimum contacts with New Mexico because Warren Buffett appeared once in New Mexico to film a comedy skit and Rio Grande "marketed" itself as a Berkshire company in a press release.  It is well-established that "sporadic or isolated" contacts with a forum state do not subject a defendant to general personal jurisdiction.  *See Shrader v. Biddinger*, 633 F.3d 1235, 1247 (10th Cir. 2011).  The Warren Buffett visit and the Rio Grande press release are one-time events that certainly fall into the category of "sporadic or isolated" contacts and cannot provide a basis for general personal jurisdiction.

Additionally, Plaintiffs assert that this Court has general personal jurisdiction over Berkshire because Berkshire exercises control over its GEICO companies by receiving management reports from GEICO and encouraging GEICO, through the reports to stockholders, to produce float as well underwriting profits to benefit Berkshire.  In New Mexico, if a foreign

parent corporation owns all of a New Mexico subsidiary corporation's stock, "jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation…." *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994) (citation omitted). The "mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Id.* (citation omitted). Nonetheless, the Court may properly invoke jurisdiction over a foreign parent company predicated on the acts of one of its subsidiaries if the parent company actually controls the subsidiary's day-to-day business decisions and disregards the subsidiary's corporate form. *Weisler v. Cmty. Health Sys., Inc.*, 2012 WL 4498919, at *12 (D.N.M.). On the other hand, a normal parent-subsidiary relationship involves reports on profits, monitoring a subsidiary's performance, and supervising its finances and capital budget decisions, activities which do not impute personal jurisdiction to the parent company. *City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550, 555-56 (S.D. Ill. 2011). *See also Weisler*, 2012 WL 4498919 at *5 ("general references by a parent corporation to the business of a subsidiary as being part of the business of the parent does not confer personal jurisdiction or serve to erase the substantive and legal distinctions between corporations.").

      Here, receiving reports from GEICO and encouraging GEICO to be profitable are simply normal parent-subsidiary actions and do not indicate that Berkshire controls the day-to-day activities of GEICO. Plaintiffs, however, argue that the reports to stockholders contain language such as "we" and "our" which demonstrates that Berkshire "identifies itself as interrelated in in its insurance and claim handling businesses…." (Doc. 41) at 4. Contrary to Plaintiffs' argument, such inclusive generic language does not demonstrate that Berkshire controls the day-to-day activities of GEICO. *See Moody v. Charming Shoppes of Delaware, Inc.*, 2008 WL

10

2128955, at *7 (N.D. Cal.) (generic language in news release and on website "simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent."). Berkshire's dealings with GEICO to encourage profits do not provide a basis for general personal jurisdiction over Berkshire.

Furthermore, Plaintiffs argue that Berkshire conducts business in New Mexico through its control of CORT Business Services and See's Candies, New Mexico companies. Although Berkshire has presented evidence that it does not maintain any real or personal property in New Mexico, does not have employees or agents in New Mexico, does not conduct business in New Mexico, and does not have a registered agent in New Mexico, Plaintiff contradicts that evidence, to an extent, by producing evidence that Warren Buffett is the director of CORT Business Services and See's Candies. The fact Warren Buffett is listed as the director of CORT Business Services and See's Candies raises the question of how involved Berkshire might be in controlling those New Mexico businesses. Under these circumstances, the Court cannot conclude either that (1) Plaintiffs have established a *prima facie* showing of general personal jurisdiction over Berkshire based on its involvement in CORT Business Services and See's Candies, or (2) Berkshire has presented a compelling argument why exercising general personal jurisdiction pursuant to its business dealings with CORT Business Services and See's Candies would be unreasonable. This uncertain situation leads the Court to consider Plaintiffs' request for jurisdictional discovery.

    2.  *Plaintiffs' Request for Jurisdictional Discovery*

As a preliminary matter, the Court notes that it is not required to recognize "a general request for discovery" in a response to a Rule 12(b)(2) motion to dismiss. *World Wide Ass'n of Specialty Programs & Sch. v. Houlahan*, 138 Fed. Appx. 50, 52 (10th Cir. 2005). A party

11

seeking additional jurisdictional discovery should file an "explicit, supported motion for discovery." *Id.* Nonetheless, because the Court is vested with broad discretion to decide whether to allow jurisdictional discovery, the Court will proceed to rule on Plaintiffs' request for discovery. *See Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.,* 385 F.3d 1291 (10th Cir. 2004); *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002).

The party seeking jurisdictional discovery bears the burden of showing that jurisdictional discovery is necessary. *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort,* 629 F.3d 1173, 1190 (10th Cir. 2010). The moving party must support his request for jurisdictional discovery by more than a mere "hunch that it might yield jurisdictionally relevant facts." *Id.* (quoting *Boschetto v. Hansing,* 539 F.3d 1011, 1020 (9th Cir. 2008)). As this Court has explained,

> the district court is not "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." Rather, discovery is meant to "allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." This means that before a court grants discovery, a plaintiff must first provide some reasonable allegations on which to base the pursuit of discovery.

*McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1195 (D.N.M. 2013) (citation omitted). Furthermore, a court abuses its discretion to deny a jurisdictional discovery request only if the denial prejudices a litigant. *Sizova,* 282 F.3d at 1326. Prejudice occurs when "pertinent facts bearing on the question of jurisdiction are controverted … or where a more satisfactory showing of the facts is necessary." *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

In this case, Plaintiffs have supplied the Court with at least a modicum of objective support regarding Berkshire's possible contacts with New Mexico through CORT Business Services and See's Candies. Moreover, Plaintiffs have demonstrated that at least a more

satisfactory showing of the facts is necessary to decide the question of whether general personal jurisdiction exists on that basis. Consequently, the Court grants Plaintiffs' request for jurisdictional discovery to address that narrow question. The Court, further, determines that Plaintiffs' discovery requests should be more tailored to address the issue raised in the briefing: to what extent does Berkshire control the day-to-day activities of CORT Business Services and See's Candies.

Plaintiffs also seek discovery with respect to whether Berkshire is a passive owner of GEICO or whether Berkshire "has an active interest in the operations of various GEICO entities." (Doc. 41) at 6. Mr. Krutter has specifically attested that Berkshire does not control GEICO's operations and that Berkshire maintains a separate identity from GEICO. Plaintiffs, however, point to the reports to stockholders to show that Berkshire controls the GEICO companies, e.g., the reports encourage the GEICO companies to create float and underwriting profits, and the reports' language indicates that Berkshire has insinuated itself in the insurance businesses. Plaintiffs further note that Berkshire has in other litigation produced reports and presentations "pertaining to 'cost containment efforts,' and bill processing systems, and financial aspects of claim handling that it receives from various GEICO entities." *Id.* (citing *Johnson v. GEICO Cas. Co.*, 269 F.R.D. 406 (D. Del. 2010)). Plaintiffs, therefore, conclude that Berkshire's cost containment efforts and reports artificially lower GEICO claims payments, including those made in New Mexico.

Plaintiffs, however, do not provide a modicum of objective support to back their request for discovery pertaining to Berkshire's control of the GEICO companies. First, as stated above, a normal parent-subsidiary relationship involves reports on profits, monitoring a subsidiary's performance, and supervising its finances and capital budget decisions. A parent company will

naturally direct its subsidiaries to maximize profits. Use of "we" and "our" in the reports to stockholders also does not indicate that Berkshire controls the day-to-day activities of GEICO. Second, the *Johnson* case is distinguishable from this case. The *Johnson* case involves a motion to compel defendants to produce reports and presentations they made to Berkshire, unlike this case which involves a Rule 12(b)(2) motion to dismiss. Moreover, Berkshire was not a defendant or party in the *Johnson* case. For these reasons, Plaintiffs' request for discovery regarding Berkshire's control over GEICO appears to be a fishing expedition and will not be granted.

Plaintiffs further seek discovery on whether Warren Buffett or Berkshire employees conducted other Berkshire business while Warren Buffett was in New Mexico filming the comedy skit for Berkshire. A sporadic or isolated contact like Warren Buffett coming to New Mexico to film one comedy skit does not provide the modicum of objective support necessary to justify granting discovery regarding that visit. Again, this request for discovery is an unwarranted request for a fishing expedition.

Because the Court will allow some limited jurisdictional discovery, the Court will deny the Motion to Dismiss without prejudice and permit Berkshire to re-file the Motion to Dismiss after the conclusion of the limited jurisdictional discovery.

IT IS ORDERED that

1. Defendant Berkshire Hathaways' Motion to Dismiss (Doc. 23) is denied without prejudice;

2. Plaintiffs have 45 days from the date of this Memorandum Opinion and Order to complete limited discovery on the extent of Berkshire's day-to-day control of activities at CORT Business Services and See's Candies;

3.  Berkshire will have 14 days after the completion of the limited jurisdictional discovery to re-file its Motion to Dismiss; and

4.  briefing on a re-filed Motion to Dismiss will be conducted pursuant to the Local Rules of Civil Procedure.

_____
UNITED STATES DISTRICT JUDGE