# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DIANA WILLIS *et al.*,

      Plaintiffs,

vs.                                       Civ. No. 13-280 KG/KK

GEICO GENERAL INSURANCE COMPANY
*et al.*,

      Defendants.

## ORDER REGARDING DISCOVERY MOTIONS

      THIS MATTER comes before the Court on the following motions:  (1) Defendant GEICO General Insurance Company's ("GEICO") Motion for Protective Order (Doc. 139), filed October 15, 2015; (2) former Defendant Government Employees Insurance Company's ("Government Employees") Motion for Protective Order (Doc. 140), filed October 15, 2015; (3) Defendant GEICO's Motion for Protective Order Limiting the Deposition Testimony of Karlyn Nelson (Doc. 147), filed November 4, 2015; and, (4) Defendant GEICO's Motion for Protective Order Limiting the Deposition Testimony of Ruben Garay, Ann Pelczar, and Mark Euziere (Doc. 148), filed November 6, 2015.  The Court, having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, FINDS that:

(1)      Defendant GEICO's Motion for Protective Order (Doc. 139) should be GRANTED IN PART and DENIED IN PART;

(2)      former Defendant Government Employees' Motion for Protective Order (Doc. 140) should be DENIED AS MOOT;

(3)      Defendant GEICO's Motion for Protective Order Limiting the Deposition Testimony of Karlyn Nelson (Doc. 147) should be DENIED; and,

(4)     Defendant GEICO's Motion for Protective Order Limiting the Deposition Testimony of

Ruben Garay, Ann Pelczar, and Mark Euziere (Doc. 148) should be DENIED.

## I. Background

Plaintiffs filed this lawsuit on February 6, 2013, in the Thirteenth Judicial District Court for the State of New Mexico, and Defendants removed it to this Court on March 22, 2013. (Docs. 1, 1-1.)  In their complaint, Plaintiffs allege the following.  On May 15, 2010, Joshua Kiscadon, while intoxicated, fleeing a crime scene, speeding, and driving on a suspended license, lost control of his vehicle and struck Plaintiff Diana Willis' vehicle, causing her serious bodily injury and property damage.  (Doc. 1-1 ¶¶ 15-20.)  Plaintiffs subsequently demanded policy limits from Mr. Kiscadon's insurer, Defendant GEICO, which Defendant GEICO paid.  (*Id.* ¶¶ 32, 33.)     Plaintiffs further demanded that Defendant GEICO, as their own uninsured/underinsured motorist ("UM/UIM") insurer, compensate them for their damages in excess of Mr. Kiscadon's policy limits.  (*Id.* ¶¶ 35, 42, 53, 58.)  Several months of communications between Plaintiffs' counsel and Defendant GEICO, including at a private mediation, failed to result in a mutually satisfactory resolution of Plaintiffs' UM/UIM claim.  (*Id.* ¶¶ 59-120.)  Plaintiffs therefore filed this lawsuit, seeking to require Defendant GEICO to pay their UM/UIM claim in full.  (*Id.* ¶¶ 138-40.)  Plaintiffs also seek extracontractual damages from Defendant GEICO based on allegations that it mishandled their UM/UIM claim as part of its regular business practices.  (*Id.* ¶¶ 59-137, 141-59.)  At this time only Plaintiffs' extracontractual claims remain pending.[1]

Plaintiffs assert several different extracontractual claims against Defendants, *i.e.*, claims under the New Mexico Unfair Practices Act ("UPA"), N.M. Stat. Ann. § 57-12-1 *et seq.* and the

---

[1] The parties reported that they settled Plaintiffs' UM/UIM claims in full in September 2015.  (Doc. 130 at 1.)

New Mexico Unfair Trade Practices and Frauds Act, also called the Unfair Insurance Practices Act ("UIPA"), N.M. Stat. Ann. §59A-16-1 *et seq.*, as well as tort claims for "insurance bad faith." (Doc. 1-1 at 22, 24, 26.) The claims share a common factual basis, however. As described in considerable detail in their complaint, Plaintiffs' grievances include Defendant GEICO's alleged misrepresentation and miscalculation of Plaintiffs' UM/UIM coverage limits for several months, and its alleged undervaluation of and delay in paying their 2010 UM/UIM claim for several years. (*Id.* at 6-7, 10-22.) Discovery in this case began in March 2015 (Doc. 69), and has generated a considerable number of disputes that the parties have been unable to resolve without the Court's assistance. Presently before the Court for resolution are the four (4) pending discovery motions listed above. (Docs. 139-40, 147-48.)

## II. Analysis

The Federal Rules of Civil Procedure govern discovery in federal civil actions. As a preliminary matter, Rule 26, which addresses the scope of discovery, was recently amended. The amendment governs "all civil cases commenced after December 1, 2015 and insofar as just and practicable, all proceedings then pending." *Basulto v. Exact Staff, Inc.*, 2016 WL 879861, at *2 (D. Colo. Mar. 8, 2016); *Zbylski v. Douglas Cnty. Sch. Dist.*, — F. Supp. 3d —, 2015 WL 9583380, at *7 n.5 (D. Colo. Dec. 31, 2015). The Court finds that it is "just and practicable," and indeed beneficial, to apply the amended Rule 26 to the pending discovery motions in this matter, because the amended rule "reflects the need for continuing and close judicial involvement in the cases," such as this one, "that do not yield readily to the ideal of effective party management." Fed. R. Civ. P. 26(b)(1), 2015 Amendment, Advisory Committee Notes; *see In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009) ("[W]e . . . give weight to the advisory committee's notes that accompany Rule 26.").

According to Rule 26(b), as amended, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors the Court is to consider in determining whether discovery is "proportional to the needs of the case" are:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. [2]

*Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "The court's responsibility, using all the information provided by the parties, is to consider these . . . factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26(b)(1), 2015 Amendment, Advisory Committee Notes.

Rule 26(c), in turn, governs the Court's authority to issue protective orders. Fed. R. Civ. P. 26(c)(1). The Court may issue a protective order "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* A protective order may forbid or limit particular discovery, or otherwise control the terms on which it may be had. *Id.* Moreover, "[i]f a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2). The party seeking a protective order bears the burden of showing good cause for the order to issue. *Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir. 2000); *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1190. The decision whether to grant a motion for protective order is within the trial court's discretion. *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1195; *Nelson v.*

---

[2] The *Basulto* court noted that the principles of proportionality set forth in the December 1, 2015 amendment to Rule 26(b) "are the same principles that would have applied through the former Rule 26(b)(2)(C)(iii)." 2016 WL 879861, at *2.

*Hardacre*, — F.R.D. —, 2016 WL 141633, at *2 (D. Kan. Jan. 12, 2016); *see Morales v. E.D. Etnyre & Co.*, 229 F.R.D. 661, 662 (D.N.M. 2005) ("Federal district courts have broad discretion over discovery.") (citing cases).

A.     Defendant GEICO's Motion for Protective Order (Doc. 139)

In its first pending discovery motion, Defendant GEICO seeks a protective order prohibiting or limiting the scope of the discovery Plaintiffs seek in their Second and Third Sets of Discovery, to which Defendant GEICO objected and responded on October 12, 2015.  (Doc. 139 at 2-3; *see* Docs. 139-1, 139-2.)  Specifically, Defendant GEICO seeks a protective order as to Plaintiffs' Interrogatories Nos. 12-14 and 16-17, Requests for Production ("RFP") Nos. 12-13, 15, and 17-22, and Requests for Admission ("RFA") 1-11.  (Doc. 139 at 2-3.)  The Court will address each of these written discovery requests in turn.

1.     *Interrogatories*

(a)     **Interrogatory No. 12**

Plaintiffs' Interrogatory No. 12 asks Defendant GEICO to "identify the safeguards . . . in place" to ensure that an insured's UM/UIM coverage "accurately reflects the amount of such insurance selected by the insured(s)," in New Mexico from 1999 to the present.[3]  (Doc. 139-1 at 3.)  Defendant GEICO objected that this request is overbroad as to subject matter and time,

---

[3] Interrogatories Nos. 12, 14, and 16 and RFAs Nos. 1-6 specify a time frame of "from three years before Plaintiffs purchased their insurance to the present."  (Doc. 139-1 at 3, 6, 10; Doc. 139-2 at 3, 5-6, 8, 10, 12.)  According to Defendant GEICO, "Plaintiffs purchased their [p]olicy on [June 9,] 2002."  (Doc. 139-1 at 4.)  As such, the time period for which Plaintiffs seek information in these contested requests is from June 9, 1999 to the present, a period of nearly seventeen years.

unduly burdensome, and compound, seeks information that is irrelevant and confidential,[4] and is vague and ambiguous in its use of the term "safeguards." (*Id.* at 3-4.) The Court will sustain Defendant GEICO's objections to this discovery request. Initially, the Court agrees that the term "safeguards" is vague, and renders the interrogatory overbroad and unduly burdensome, potentially implicating Defendant GEICO's policies, procedures, customs, and practices regarding sales, underwriting, claims handling, hiring, training, and supervision. The extensive seventeen-year period of time for which information is requested aggravates the request's overbroad and unduly burdensome nature.

Further, the information sought appears irrelevant to the parties' claims and defenses. The Court acknowledges that, notwithstanding Defendant GEICO's arguments to the contrary, Plaintiffs *have* asserted extracontractual claims based on Defendant GEICO's alleged refusal, for several months, to reform Plaintiffs' insurance policy to provide UM/UIM coverage limits equal to the policy's liability limits, which Plaintiffs allege New Mexico law required. (Doc. 1-1 ¶¶ 38-39). The Court further acknowledges that, again contrary to Defendant GEICO's arguments, Plaintiffs' UIPA claims make relevant not only Defendant GEICO's handling of Plaintiffs' 2010 UM/UIM claim, but also whether its handling was consistent with its "general business practice[s]." N.M. Stat. Ann. § 59A-16-20; (Doc. 1-1 ¶¶ 148-49).

The Court is also aware that Plaintiffs have asserted claims for punitive damages, and that "evidence of repeated engagement in prohibited conduct knowing or suspecting it is unlawful is relevant support for a substantial [punitive damages] award." *Aken v. Plains Elec.*

---

[4] Defendant GEICO objected that virtually every discovery request Plaintiffs served seeks confidential commercial information. (*See generally* Docs. 139-1, 139-2.) The Court will not address these boilerplate objections individually, but will simply note that it has already entered a stipulated Protective Order Regarding GEICO's Claimed Confidential Commercial Information ("Confidentiality Order") (Doc. 121), and that documents produced in compliance with the present Order may be produced subject to the Confidentiality Order, if warranted.

*Generation & Transmission Co-op, Inc.*, 2002-NMSC-021, ¶ 21, 49 P.3d 662, 670 (N.M. 2002); *cf. Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 16, 85 P.3d 230, 236 (N.M. 2004) ("As a general proposition . . . once a plaintiff has made a prima facie showing sufficient to submit his or her [insurance] bad-faith claim to the jury, the determination whether the insurer's bad-faith conduct is deserving of punitive damages is for the jury to decide."). Thus, as Plaintiffs contend, evidence regarding whether Defendant GEICO repeatedly and knowingly engaged in the conduct Plaintiffs allege is unlawful is relevant to Plaintiffs' punitive damages claims. For these reasons, the Court rejects Defendant GEICO's broad arguments that the Court should issue a protective order because Plaintiffs have asserted no claims regarding equalization of coverage limits, or because only evidence specific to its handling of Plaintiffs' 2010 UM/UIM claim is relevant to the parties' claims and defenses.

The Court also rejects Defendant GEICO's argument that Plaintiffs should not be allowed to conduct discovery on their equalization of coverage claims because they do not have standing to bring them.[5] (Doc. 139 at 5-6, 21-22.) Specifically, Defendant GEICO argues that because it ultimately reformed Plaintiffs' UM/UIM coverage limits to equal their liability coverage limits, it has already provided Plaintiffs with the only remedy to which they are entitled pursuant to these claims. (*Id.*); *see Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 30, 245 P.3d 1214, 1223 (N.M. 2010) ("proper remedy" for insurer's failure to obtain valid rejection of UM/UIM coverage limits equal to liability limits "is to reform the policies to provide UM/UIM coverage equal to the liability limits"). Thus, Defendant GEICO contends that Plaintiffs cannot show that Defendant GEICO's conduct injured them, or that the injury will be redressed by a favorable

---

[5] This argument would be more appropriate in a motion to dismiss or for summary judgment.

decision.  (Doc. 139 at 21-22); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, —
U.S. —, 134 S. Ct. 1377, 1386 (2014) (to have standing, plaintiff must have suffered injury in
fact fairly traceable to defendant's challenged action and likely to be redressed by a favorable
judicial decision).

If Plaintiffs' equalization of coverage claims sounded only in contract, and sought only
full payment of their 2010 UM/UIM claim, Defendant GEICO's argument would likely be
correct.  Here, however, Plaintiffs also assert extracontractual claims, and allege that they
suffered damages from Defendant GEICO's bad-faith refusal to equalize their coverage limits for
a period of about six months.[6]  (Doc. 1-1 ¶¶ 38-39, 144-45, 148-51, 153-55; *see also* Doc. 149 at
6-10.)  As such, Plaintiffs have alleged an injury in fact fairly traceable to Defendant GEICO's
refusal to equalize coverage limits likely to be redressed by a favorable judicial decision, in a
manner sufficient to warrant discovery on their equalization of coverage claims.  *Lexmark Int'l,
Inc.*, 134 S. Ct. at 1386; *see* N.M. Stat. Ann. § 59A-16-30 (any person injured by insurer's
violation of UIPA has right to sue "to recover actual damages"); *cf. Valdez v. Metro. Prop. &
Cas. Ins. Co.*, 2012 WL 1132414, at *23-*24 (D.N.M. Mar. 31, 2012) (plaintiffs failed to state
claim under UIPA where they did not seek actual damages and failed to allege irreparable harm
necessary for injunctive relief).  In short, the Court finds that discovery about Defendant
GEICO's delay in equalizing Plaintiffs' UM/UIM and liability coverage limits, and about its
general business practices in this regard, is "relevant" to Plaintiffs' claims within the meaning of
Rule 26(b)(1).

---

[6] These damages appear to include Plaintiffs' loss of use of the money that Defendant GEICO allegedly owed them
for the six months Defendant GEICO refused to equalize coverage, as well as the costs Plaintiffs' counsel incurred
in attempting to get Defendant GEICO to agree to do so.  (Doc. 157-3 at 4-5.)

However, the Court also finds that Plaintiffs' equalization of coverage claims form a relatively minor part of Plaintiffs' case.   In their complaint, Plaintiffs allege that:   (a) the underlying accident at issue occurred on May 15, 2010; and, (b) Defendant GEICO at first "did not provide plaintiffs with the correct amount of UM/UIM coverage under New Mexico law"; but, (c) Defendant subsequently "agreed to reform the policy" to provide UM/UIM coverage equal to Plaintiffs' liability coverage limits, no later than November 13, 2010.   (Doc. 1-1 ¶¶ 15, 38-39.)   Thus, Plaintiffs contend that Defendant GEICO refused to equalize their coverage limits for a period of no more than six *months*.[7]   (*Id.*)   By way of comparison, Plaintiffs allege—and in considerably greater detail—that Defendant GEICO persisted in undervaluing their 2010 UM/UIM claim, and refused to pay it in whole or in part, from May 2010 to September 2015, a period of over five *years*.   (*Id.* ¶¶ 40-41, 60-120; Doc. 130 at 1.)   The subsidiary nature of Plaintiffs' equalization of coverage claims indicates that extensive, invasive, and costly discovery regarding them is unlikely to be "proportional to the needs of the case."   Fed. R. Civ. P. 26(b)(1).

Moreover, the particular information sought in Interrogatory No. 12 appears irrelevant to Plaintiffs' equalization of coverage claims.   Plaintiffs have not identified, and the Court has not found, any allegations in the complaint that Defendant GEICO ever refused to provide Plaintiffs with the UM/UIM coverage that they "selected."   (Doc. 139-1 at 3.)   On the contrary, Plaintiffs appear to allege that, for several months, Defendant GEICO *insisted* on providing the lower UM/UIM coverage Plaintiffs selected, refusing to instead reform the policy and increase their UM/UIM coverage limits to equal liability limits.   (Doc. 1-1 ¶¶ 15, 38-39.)   Thus, any

---

[7] Also, it appears undisputed that Defendant GEICO agreed to reform Plaintiffs' UM/UIM coverage limits less than *one month* after the October 18, 2010 issuance of the *Jordan* and *Weed Warrior* decisions by the New Mexico Supreme Court.   (Doc. 1-1 ¶¶ 15, 38-39.)

"safeguards" to ensure that a GEICO insured's UM/UIM coverage "accurately reflects the amount . . . selected by the insured(s)" would have made no difference to Defendant GEICO's alleged refusal to equalize Plaintiffs' UM/UIM coverage limits, and are irrelevant to the parties' claims and defenses.  In short, because this interrogatory seeks information that is neither relevant nor proportional to the needs of the case, and that would be unduly burdensome for Defendant GEICO to provide, the Court will grant Defendant GEICO's motion for a protective order excusing them from answering it.  Fed. R. Civ. P. 26(c)(1)(D).

(b)      **Interrogatory No. 13**

In this interrogatory, Plaintiffs ask Defendant GEICO to identify all documents any of its employees reviewed in the process of issuing a certified copy of Plaintiffs' insurance policy, and how long each such person spent on this task.  (Doc. 139-1 at 5.)  Defendant GEICO objected that this interrogatory is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential.  (*Id.* at 5-6.)  The Court will overrule Defendant GEICO's objections to this interrogatory.  First, Defendant GEICO has not argued, and it seems to the Court unlikely, that Defendant GEICO has issued a certified copy of Plaintiffs' insurance policy on numerous occasions.  As such, the scope of this request is quite limited, and responding to it will not unduly burden Defendant GEICO.  Nor does the interrogatory "seek information about discrete separate subjects," which would render it improperly compound.  *Wildearth Guardians v. Pub. Serv. Co. of Colo.*, 2010 WL 5464313, at *1 (D. Colo. Dec. 29, 2010).  Finally, while the requested information does not appear vital to Plaintiffs' case, it is nevertheless relevant to their claims that Defendant GEICO failed to determine their UM/UIM coverage limits timely and correctly under New Mexico law, and

10

unreasonably delayed in paying their 2010 UM/UIM claim.  The Court will therefore deny Defendant GEICO's motion for a protective order as to this discovery request.

      (c)    **Interrogatory No. 14**

Plaintiffs' Interrogatory No. 14 seeks the following information from Defendant GEICO for New Mexico from 1999 to the present:

> a) the quality control done to confirm accurate coding of coverages when the policy is purchased; b) your reason(s) that Option Forms or other documents are not available to claims handlers and must be requested from Claims Coverage personnel; c) the coding process when an Option Form comes back from policyholder; [d]) your steps to insure the accuracy of sworn affidavits of coverage . . . ; and [e]) the quality control done by GEICO to confirm accurate coding of coverages by sales counselors when a policy is purchased.[8]

(Doc. 139-1 at 6-7.)  Defendant GEICO objected that this interrogatory is overbroad as to subject matter and time, unduly burdensome, and compound, seeks information that is irrelevant and confidential, and is vague and ambiguous in its use of the terms "quality control" and "coding." (*Id.* at 7-8.)

The Court will sustain in part and overrule in part Defendant GEICO's objections to this interrogatory.  As an initial matter, the Court agrees that the interrogatory is compound, vague, and therefore overbroad and not proportional to the needs of the case.  Further, as to subparts (a), (c), and (e), the interrogatory seeks information that is at least overbroad and unduly burdensome as to subject matter, if not flatly irrelevant to Plaintiffs' claims.  Plaintiffs' complaint does not allege that Defendant GEICO failed to accurately "code" the amount of UM/UIM coverage Plaintiffs selected when they purchased their policy in 2002, and as such Defendant GEICO's business practices in this regard have no bearing on its handling of Plaintiffs' UM/UIM claim.

---

[8] Subparts (a) and (e) of this interrogatory are nearly identical.

The Court will therefore grant Defendant GEICO's motion for protective order as to these subparts.

Subparts (b) and (d), however, seek information relevant to Plaintiffs' claims that Defendant GEICO unduly delayed in processing their 2010 UM/UIM claim, and wrongfully refused to reform their UM/UIM coverage limits for several months, as discussed in Section II.A.1.a., *supra*. The Court will grant Defendant GEICO's motion for protective order in part as to these subparts. Specifically, the Court will require Defendant to answer these subparts as two separate interrogatories, limited in time from October 2010[9] to December 2011, with the phrase "or other documents" stricken from subpart (b), and with subpart (d) limited to responsive written policies, procedures, and training materials applicable to UM/UIM claims.

(d)    **Interrogatory No. 16**

Interrogatory No. 16 asks Defendant GEICO, for New Mexico from 1999 to the present, to identify its "sales protocols or procedures" for automobile liability and UM/UIM insurance, each person involved in creating such protocols or procedures, and "what each person did." (Doc. 139-1 at 10.) Plaintiffs indicate that "any default or 'typical' procedures concerning whether the amount of liability and UM/UIM insurance matched" should be included in Defendant GEICO's answer. (*Id.*) Defendant GEICO objected that this interrogatory is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential. (*Id.* at 11-12.)

---

[9] The Court finds that requests seeking extensive information about Defendant GEICO's business practices regarding equalization of coverage before October 2010 are not proportional to the needs of the case, because Defendant GEICO's agents have consistently indicated that the company's practice before the issuance of *Jordan* and *Progressive N.W. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, 245 P.3d 1209 (N.M. 2010) ("*Weed Warrior*") was not to equalize the liability and UM/UIM coverage limits of policies like Plaintiffs'. (*See, e.g.*, Doc. 155-1 at 8; Doc. 155-2 at 2-5; Doc. 155-3 at 2-5; Doc. 170-1 at 1; Doc. 170-2 at 9.)

The Court agrees that this interrogatory seeks largely irrelevant information, and is overbroad and unduly burdensome.  Plaintiffs' complaint asserts no claims alleging that Defendant GEICO's sales protocols or procedures were improper.  As such, Plaintiffs' request for all "sales protocols and procedures" concerning the sale of auto liability and UM/UIM coverage in New Mexico for a period of seventeen years is the sort of excessive "fishing expedition" that the federal courts have consistently censured, and is in no way "proportional to the needs of the case."  *Martinez v. Cornell Corr. of Tex.*, 229 F.R.D. 215, 218 (D.N.M. 2005) ("[T]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." (citation omitted)); Fed. R. Civ. P. 26(b)(1).  The Court will therefore grant Defendant GEICO's motion for protective order as to this interrogatory, except as to the identification of responsive written sales protocols or procedures, if any, "concerning whether the amount of liability and UM/UIM insurance matched" in effect in June 2002, when Plaintiffs purchased their policy.

(e)     **Interrogatory No. 17**

Interrogatory No. 17 asks Defendant GEICO, for insurance policies it sold in New Mexico from 2006 to 2012, to identify "by name, address, claim number, date of loss and policy number," each insured who reported an accident and also had one of four different combinations of unequal automobile bodily injury liability and UM/UIM bodily injury coverage limits.[10] (Doc. 139-1 at 12-13.)  Defendant GEICO objected that this interrogatory is overbroad as to

---

[10] The specified combinations of coverage are:  (a) $50,000/$100,000 bodily injury liability with $25,000/$50,000 UM/UIM bodily injury coverage; (b) $100,000/$300,000 bodily injury liability with no UM/UIM bodily injury coverage; (c) $100,000/$300,000 bodily injury liability with $25,000/$50,000 UM/UIM bodily injury coverage; and, (d) $300,000 "combined single limit coverage" with $25,000/$50,000 UM/UIM bodily injury coverage.  (Doc. 139-1 at 12-13.)

subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential. (*Id.* at 13-14.)

The Court will grant Defendant GEICO's motion for protective order in part as to this interrogatory. The interrogatory is not compound, *Wildearth Guardians*, 2010 WL 5464313, at *1, and seeks information that is, in the aggregate, relevant to Plaintiffs' claims that Defendant GEICO had or has a business practice of wrongfully failing or refusing to equalize its insureds' liability and UM/UIM coverage limits as required by New Mexico law. (Doc. 1-1 ¶¶ 38-39, 148-49). However, for the reasons discussed in Section II.A.1.a., *supra*, the interrogatory is substantially overbroad, unduly burdensome, and not proportional to needs of the case. It would also allow Plaintiffs to obtain personal information about Defendant GEICO's other policyholders without their consent. For these reasons, the Court will limit this interrogatory to: (1) the total number of automobile insurance policies Defendant GEICO issued in New Mexico (a) with the listed non-matching liability and UM/UIM coverage limits, (b) pursuant to which a UM/UIM claim was pending in 2010, or was made between 2010 and December 2011, *and* (c) for which the insured, like Plaintiffs, had not previously executed an "option form" rejecting UM/UIM coverage; and, (2) the number of these policies for which Defendant GEICO subsequently equalized UM/UIM and liability coverage limits by reforming the policies pursuant to New Mexico law as stated in *Weed Warrior*, 2010-NMSC-050, 245 P.3d at 1209, and *Jordan*, 2010-NMSC-051, 245 P.3d at 1214.

2.      ***Requests for Production***

(a)      **RFPs Nos. 12 and 13**

In RFP No. 12, Plaintiffs ask Defendant GEICO to produce "all documents for 2009 to the present concerning the imputing of values to or the use of Claims IQ [sic] in New Mexico."

14

(Doc. 139-1 at 18.)  Similarly, in RFP No. 13, Plaintiffs seek "all documents for 2009 to the present concerning the use of Claims IQ [sic] in New Mexico to adjust or evaluate claims." (*Id.*) Defendant GEICO objected that both of these requests are overbroad as to subject matter and time, unduly burdensome, and compound, and seek information that is confidential, and that RFP No. 12 is also vague and ambiguous in its use of the term "imputing." (*Id.* at 18-19.)  Subject to these objections, Defendant GEICO represented that, pursuant to a stipulated confidentiality order, it produced about 10,000 pages of "training documents, TCMs, Regional Training information, TCR2 documents, Annual State Filings and Claims manuals," and "TCM Re ClaimIQ Documentation and Claim Handling Procedures," and that these documents "included the responsive training material for th[ese] Request[s]." (*Id.*)

The Court will grant Defendant GEICO's motion for protective order as to these requests in part.  The Court agrees that the term "imputing" is ambiguous in RFP No. 12, and that both requests are overbroad, unduly burdensome, and not proportional to the needs of the case in seeking "all documents . . . concerning . . . the use of Claims IQ [sic] to adjust or evaluate claims in New Mexico" for a period of about eight years.  The Court will therefore limit these requests to Defendant GEICO's written policies, procedures, and training materials regarding the entry of numerical values into ClaimIQ, the calculation and evaluation of such numerical values, and the use of ClaimIQ to adjust or evaluate claims, with respect to UM/UIM claims in New Mexico from May 2010 to September 2015.

(b)      <b>RFP No. 15</b>

In this request, Plaintiffs seek "all "Average Loss Paid 'ALP' quartile reports . . . concerning any adjuster handling New Mexico claims" for the last five years.  (Doc. 139-1 at 20.)  Defendant GEICO objected that this request is overbroad as to subject matter and time,

15

unduly burdensome, and compound, and seeks information that is irrelevant and confidential. (*Id.* at 20-22.)  Subject to these objections, Defendant GEICO produced its "confidential New Mexico UM Daily Payments Report, New Mexico Bodily Injury ALP Report, and New Mexico UM ALP Report for 2010-2014," consisting of three pages that do not appear to be attached to Defendant GEICO's motion.  (*Id.* at 22.)

The Court will sustain Defendant GEICO's objections to this request.  On its face, the request is overbroad and unduly burdensome because it is not limited to adjustors handling automobile liability or UM/UIM claims for Defendant GEICO.  Its subject matter is also more subtly problematic.  Plaintiffs contend that the information is relevant to their claims that Defendant GEICO persistently undervalued Plaintiffs' 2010 UM/UIM claim, because GEICO adjustors who "pay[] too much face certain consequences," and this request will tell them "how GEICO incentivizes its adjusters to pay less on claims."  (Doc. 149 at 14.)  However, documents responsive to this request would not, without considerably more, tell Plaintiffs how Defendant GEICO allegedly "incentivizes its adjusters to pay less on claims."  (*Id.*)  Rather, at most, they would reveal how much certain adjustors paid on some or all New Mexico claims for the years in question.  For this request to constitute more than an overbroad and unduly burdensome fishing expedition, Plaintiffs would need to point to "at least a modicum of support for" its contention that GEICO adjustors "who pay too much face certain" unspecified, but presumably negative, "consequences."  *See Martinez*, 229 F.R.D. at 218 ("Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.").  In the current absence of such support, the Court will grant Defendant GEICO's motion for protective order as to this request.

16

(c)      **RFP No. 17**

Plaintiffs in this request seek all "information saved in any form . . . referencing GEICO's protocols and necessary changes in protocols after" the *Weed Warrior* and *Jordan* decisions. (Doc. 139-2 at 24.)   Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential.   (*Id.* at 24-26.)   Subject to these objections, Defendant GEICO produced "non-privileged training documents, TCMs, Regional Training information, TCR2 documents, Annual State Filings and Claims manuals," consisting of close to 10,000 pages.   (*Id.* at 26.)   Defendant GEICO also produced a "supplemental privilege log regarding the documents not being produced," which Defendant GEICO does not appear to have attached to its motion.   (*Id.*)

The Court will sustain Defendant GEICO's objections to this request in part.   The Court will not address Defendant GEICO's claims of privilege at this time, because Defendant GEICO has not provided sufficient information with which the Court could do so, and Plaintiffs have not challenged Defendant GEICO's privilege log or claims.   However, the Court agrees that the request, although it seeks some relevant information, is overbroad, unduly burdensome, and not proportional to the needs of the case.   Read literally, this request would encompass every document "referencing" *any* of Defendant GEICO's "protocols" after October 2010, when the decisions in question were issued.   Even Plaintiffs may not desire a production quite so broad. At any rate, the Court will grant Defendant GEICO's motion for protective order in part. Defendant GEICO will be required to produce any non-privileged documents memorializing, describing, or explaining any changes to Defendant GEICO's protocols that were made in response to the *Weed Warrior* and/or *Jordan* decisions.

17

In addition, Defendant GEICO is to identify in a second supplemental privilege log any documents responsive to the revised request that it has continued to withhold on a claim of privilege.  Fed. R. Civ. P. 26(b)(5)(A).  This log is to include the following information as to each listed document:  (a) the document's title, if any; (b) the type of document, *e.g.*, a letter, a memorandum, an e-mail message; (c) the date(s) on which the document was prepared; (d) the date(s) on which the document was transmitted to its intended recipients, if different; (e) the identity of all person(s) who prepared the document, and each such person's employer and job title; (f) the identity of all person(s) who received the document, and each such person's employer and job title; (g) the purpose(s) for preparing the document; (h) the number of pages of the document; and, (*i*) the specific privilege(s) and protection(s) being asserted as to the document.  *Kannaday v. Ball*, 292 F.R.D. 640, 645 (D. Kan. 2013).

(d)     **RFP No. 18**

In RFP No. 18, Plaintiffs ask Defendant GEICO to produce, for New Mexico from 2010 to the present, all "instructions to GEICO adjusters regarding the need to review and/or request the original Option/waiver/selection forms for policies in which liability" and UM/UIM coverage limits "do not match."  (Doc. 139-2 at 26.)  Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential.  (*Id.* at 27-28.)  Subject to these objections, Defendant GEICO produced "non-privileged training documents, TCMs, Regional Training information, TCR2 documents, Annual State Filings and Claims manuals," consisting of about 10,000 pages.  (*Id.* at 28-29.)

The Court will sustain Defendant GEICO's objections to this request in part.  The request is not compound, *Wildearth Guardians*, 2010 WL 5464313, at *1, and is relevant to Plaintiffs'

claims that Defendant GEICO unduly delayed in equalizing their liability and UM/UIM coverage limits.  However, it *is* overbroad, unduly burdensome, and not proportional to the needs of the case, for the reasons discussed in Section II.A.1.a., *supra*.  The Court will therefore grant Defendant GEICO's motion for protective order in part, and limit this request to written policies, procedures, training materials, or other company-wide written instructions in effect from October 2010 to December 2011 "regarding the need to review and/or request the original Option/waiver/selection forms for policies in which" liability and UM/UIM coverage limits do not match.  The Court will also require Defendant GEICO to produce any other written instructions "regarding the need to review and/or request the original Option/waiver/selection forms for policies in which" liability and UM/UIM coverage limits do not match, that were given to any adjustors who handled Plaintiffs' 2010 UM/UIM claim, from October 2010 to the time each such adjustor ceased to handle that claim.

(e)       <strong>RFP No. 19</strong>

In this request, Plaintiffs ask Defendant GEICO to produce, for New Mexico from 2010 to the present, a hard copy of "all computer prompts for any program used" to adjust UM/UIM claims that "direct" adjustors or other claims handlers to review or request "the original UM/UIM Option/selection form" for policies in which the liability and UM/UIM coverage limits do not match.  (Doc. 139-2 at 29.)  Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential.  (*Id.* at 29-30.)  The Court will overrule Defendant GEICO's objections to this request, except as to time.  As discussed in Section II.A.1.a., *supra*, the information this request seeks is relevant to Plaintiffs' equalization of coverage claims.  Further, Defendant GEICO has neither argued nor demonstrated that, at least from October 2010 to

19

December 2011 in New Mexico, its adjustors have used so many different computer programs to adjust UM/UIM claims, and/or that such programs have generated so many different kinds of "prompts" responsive to this request, that it would need to produce more than a few pages of screen shots, at most, to respond to it.  Thus, Defendant GEICO's motion for protective order as to this request will be denied, except to limit the request to responsive documents from October 2010 to December 2011.

(f)      **RFP No. 20**

Plaintiffs in this request ask Defendant GEICO to produce, for New Mexico from 2010 to the present, all "instructions to GEICO underwriters or sales personnel for policies . . . for which an insured has not executed a UM/UIM Option/selection/rejection form."  (Doc. 139-2 at 31.) Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential.  (*Id.* at 31-32.)  The Court will sustain Defendant GEICO's objections to this request.  Plaintiffs' complaint asserts no claims alleging that Defendant GEICO's sales personnel or underwriters engaged in any wrongful actions.  As such, Defendant GEICO's instructions to these employees have no bearing on Plaintiffs' remaining claims.  Moreover, the request is not artfully drafted and is otherwise overbroad, unduly burdensome, and not proportional to the needs of the case.  For these reasons, the Court will grant Defendant GEICO's motion for protective order as to this request.

(g)      **RFP No. 21**

Plaintiff's RFP No. 21 seeks from Defendant GEICO "all documents which reflect the total number of UM/UIM claims reported to GEICO from January 2010 to the present in which the liability coverage limits do not equal the UM/UIM limits," as well as

"the name of the insured, the name of any individuals making a claim or reporting a possible claims [sic], as well as the claim and policy numbers."  (Doc. 139-2 at 32-33.)  Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant, confidential, and private as to third parties.  (*Id.* at 33-35.)

The Court will grant Defendant GEICO's motion for protective order in part as to this request.  Contrary to Defendant GEICO's position, the request does seek information that is relevant to Plaintiffs' claims that Defendant GEICO has or had a business practice of wrongfully failing or refusing to equalize its insureds' liability and UM/UIM coverage limits as required by New Mexico law.  (Doc. 1-1 ¶¶ 38-39, 148-49.)  However, for the reasons discussed in Section II.A.1.a., *supra*, the request is substantially overbroad, unduly burdensome, and not proportional to needs of the case.  It would also allow Plaintiffs to obtain personal and private information about Defendant GEICO's other policyholders without their consent.  For these reasons, the Court will limit this request to documents drafted or redacted to reflect only the *total number* of UM/UIM claims reported to Defendant GEICO in which the policies' liability coverage limits did not match the UM/UIM limits, in New Mexico for the years 2010 and 2011.  The Court will grant Defendant GEICO's motion for protective order as to responsive documents that "reflect . . . the name of the insured, the name of any individuals making a claim or reporting a possible claims [sic], as well as the claim and policy numbers."  (Doc. 139-2 at 32-33.)

(h)     **RFP No. 22**

In this request Plaintiffs seek, for the UM/UIM claims identified in response to RFP No. 21, "documents that show . . . the number of times a request for the UM/UIM Option/selection/rejection form was made, and all responses to that request."  (Doc. 139-2 at 35.)

21

Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant, confidential, and private as to third parties.  (*Id.* at 35-37.)  The Court will sustain Defendant GEICO's objections to this request.  For the reasons discussed in Section II.A.1.a. and II.A.2.g., *supra*, RFP No. 22 seeks information that, while relevant, is tangential, overbroad, unduly burdensome, invasive of third parties' privacy interests, and not proportional to the needs of the case.  It is also vague and potentially overbroad because it does not limit the request with respect to who made each responsive request and for what purpose.  The Court will therefore grant Defendant GEICO's motion for protective order regarding this request.

       3.     ***Requests for Admission***

       (a)     **RFA No. 1**

In this request, Plaintiffs ask Defendant GEICO to admit that, in New Mexico from 1999 to the present, it "does not have an automatic prompt requiring adjustors handling UM/UIM claims to request UM/UIM Option/waiver/selection forms for New Mexico UM/UIM claims brought under policies" where UM/UIM coverage is waived or rejected or where its limits are lower than liability limits.  (Doc. 139-2 at 3.)  Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential.  (*Id.* at 3-4.)  Subject to its objections, Defendant GEICO denied the request.[11]  (*Id.* at 4.)

---

[11] The Court is uncertain why Defendant GEICO believed it necessary to move for a protective order regarding requests for admission to which it has already responded.  If Plaintiffs' counsel believed Defendant GEICO's responses to be inadequate, it would appear to be their burden to confer with opposing counsel before deciding whether to file a motion to compel.

The Court will sustain Defendant GEICO's objections to RFA No. 1. Initially, the request does not satisfy the basic requirement that requests for admission be reasonably clear and precise. Requests for admission are designed to "facilitat[e] the proof at trial by weeding out facts and items of proof over which there is no dispute." *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 79 (W.D.N.Y. 2000).

> Provided the demand is understandable and straightforward, calls for relevant information, and does not violate a recognized privilege, an objection to a request to admit is improper . . . . Ambiguous and vague requests which cannot fairly be answered will not be enforced.

*Id.* RFA No. 1 is not "understandable and straightforward." *Id.* Rather, it is confusingly phrased and uses obscure or esoteric terms such as "automatic prompt" and "UM/UIM Option/waiver/selection forms" without defining them. As such, it cannot fairly be admitted or denied. In addition, the request is extremely overbroad as to time, and compound and overbroad in encompassing UM/UIM claims both where such coverage has been waived or rejected, and where UM/UIM coverage limits were lower than liability limits. For these reasons, the Court will grant Defendant GEICO's motion for protective order as to this request.

(b)   **RFA No. 2**

In RFA No. 2, Plaintiffs ask Defendant GEICO to admit that, for New Mexico from 1999 to the present, it "does not instruct its adjusters to automatically request an insured's UM/UIM Option/rejection/selection form for policies in which UM coverage is indicated as waived or rejected." (Doc. 139-2 at 5.) Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential. (*Id.* at 5-6.) Subject to its objections, Defendant GEICO denied the request. (*Id.* at 6.) The Court will sustain Defendant GEICO's objections to this request. First,

23

the request is ambiguous, uses obscure or esoteric terms without defining them, and cannot fairly be answered. *Booth Oil Site Admin. Group*, 194 F.R.D. at 79. Further, it is extremely overbroad as to time. Finally, Plaintiffs have not alleged that their policy indicated that they waived or rejected UM coverage. As such, RFA No. 2 seeks information that is irrelevant to the parties' claims and defenses, and not proportional to the needs to the needs of the case. For these reasons, the Court will grant Defendant GEICO's motion for protective order as to this request.

(c)     **RFA No. 3**

Plaintiffs, in this request, ask Defendant GEICO to admit that, for New Mexico from 1999 to the present, it "does not instruct its adjustors to automatically request an insured's UM/UIM Option/rejection/selection form" for policies in which UM/UIM coverage limits are indicated as less than liability limits. (Doc. 139-2 at 6-7.) Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential. (*Id.* at 7-8.) Subject to its objections, Defendant GEICO denied the request. (*Id.* at 8.) The Court will sustain Defendant GEICO's objections. Like RFA No. 2, this request is ambiguous, uses obscure or esoteric terms without defining them, and cannot fairly be answered. *Booth Oil Site Admin. Group*, 194 F.R.D. at 79. It is also extremely overbroad as to time. The Court will therefore grant Defendant GEICO's motion for protective order as to this request.

(d)     **RFA No. 4**

In this request, Plaintiffs ask Defendant GEICO to admit that, for New Mexico from 1999 to the present, it "does not require its adjustors to thoroughly and completely fill out the Claims IQ [sic] form." (Doc. 139-2 at 8.) Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is

24

irrelevant and confidential.  (*Id.* at 9-10.)  Subject to its objections, Defendant GEICO denied the request.  (*Id.* at 10.)

The Court will sustain Defendant GEICO's objections to RFA No. 4.  The Court agrees that the request is overbroad, unduly burdensome, and not proportional to the needs of the case as to both time and the claims to which applies.  It is also vague and ambiguous.  In the context of the request, the term "completely" can reasonably be read to mean in a manner "having all necessary parts, elements, or steps."   http://www.merriam-webster.com/dictionary/complete.   In this sense, the term can be objectively verified and is reasonable to use in a request for admission.  However, the term "thoroughly," if it is not to be duplicative, must mean something more or different; and, the Court is not in a position to determine whether Plaintiffs intend it to mean in a manner "including every possible part or detail," "careful about doing something in an accurate and exact way," "absolute," "exhaustive," "marked by full detail," "careful about detail," or "painstaking," any of which could make sense in this context.  http://www.merriam-webster.com/dictionary/thorough.   Several of these meanings are too vague and subjective for fair use in a request for admission.  *Booth Oil Site Admin. Group*, 194 F.R.D. at 79.  For these reasons, the Court will grant Defendant GEICO's motion for protective order as to this request.

      (e)     **RFA No. 5**

In RFA No. 5, Plaintiffs ask Defendant GEICO to admit that, for New Mexico from 1999 to the present, "the failure to fill out the Claims IQ [sic] form thoroughly and completely may result in an inaccurate negotiations value range for insureds."  (Doc. 139-2 at 10.)   Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential.  (*Id.* at 10-12.)  Subject to its objections, Defendant GEICO denied the request.  (*Id.* at 12.)   The Court will grant

Defendant GEICO's motion for protective order as to this request for the reasons discussed in Section II.A.3.d., *supra*.

(f)     **RFA No. 6**

RFA No. 6 asks Defendant GEICO to admit that, for New Mexico from 1999 to the present, its "adjusters are discouraged from ever offering a settlement in an amount in excess of the top end range of the negotiation range recommended by the Claims IQ [sic]." (Doc. 139-2 at 12.)  Defendant GEICO objected that this request is overbroad as to subject matter and time, unduly burdensome, and compound, and seeks information that is irrelevant and confidential. (*Id.* at 12-14.)  Subject to its objections, Defendant GEICO denied the request. (*Id.* at 14.)  The Court will sustain Defendant GEICO's objections to this request because it is vague and ambiguous and cannot fairly be answered. *Booth Oil Site Admin. Group*, 194 F.R.D. at 79.  *Inter alia*, the request is vague in its use of the passive voice, which fails to indicate who is supposed to be discouraging adjustors from making the specified kind of offer, and in its use of the term "discouraged," which could encompass anything from a supervisor's frown to a formal written policy.  Further, the seventeen-year time frame it seeks to cover renders it overbroad, unduly burdensome, and not proportional to the needs of the case.  The Court will therefore grant Defendant GEICO's motion for protective order as to this request.

(g)     **RFA No. 7-11**

In these requests, Plaintiffs ask Defendant GEICO to admit that, in New Mexico for each "entire year" from 2009 to 2013, it "has not always required policies to be issued with equal liability coverage limits and UM/UIM limits for policies in which the insured has not executed a UM/UIM Option/selection/rejection form." (Doc. 139-2 at 14, 16, 18, 20, 22.)  Defendant GEICO objected that these requests are overbroad as to subject matter and time, unduly

burdensome, and compound, and seek information that is irrelevant and confidential. (*Id.* at 14-24.) Subject to its objections, Defendant GEICO denied the requests. (*Id.* at 16, 18, 20, 22, 24.) The Court will sustain Defendant GEICO's objections to, and grant its motion for protective order regarding, these requests, which are collectively overbroad as to time, not artfully drafted, use obscure and esoteric terms without defining them, and cannot fairly be answered. *Booth Oil Site Admin. Group*, 194 F.R.D. at 79.

B.     Former Defendant Government Employees' Motion for Protective Order (Doc. 140)

The Court dismissed Plaintiffs' claims against former Defendant Government Employees in a Memorandum Opinion and Order dated February 18, 2016. (Doc. 174 at 6-7.) Because Government Employees is no longer a party to this action, it is no longer under an obligation to respond to Plaintiffs' written discovery requests pursuant to Federal Rules of Civil Procedure 33, 34, or 36. *See* Fed. R. Civ. P. 33(a)(1), 34(a), 36(a)(1) (party may serve interrogatories, requests for production, and requests for admission "on any other party"). The Court will therefore deny Government Employees' motion as moot.

C.     Defendant GEICO's Motion for Protective Order Limiting the Deposition Testimony of Karlyn Nelson (Doc. 147)

In this motion, Defendant GEICO asks the Court to limit the deposition testimony of Karlyn Nelson to "questions . . . necessary for her to identify or authenticate" a document identified as "GEICO5_002455," which she authored. (Doc. 147 at 3, 9; Doc. 147-2 at 1.) Plaintiffs oppose the motion, arguing that they should also be permitted to ask Ms. Nelson why the document was drafted, why it does not include time requirements, why it does not "appear as a 'red flag' prompt on GEICO's claims dashboard," and "why GEICO has no 'red flag' protocol,

nor any type of automated prompt, which guarantees" a "thorough and accurate investigation into" UM/UIM coverage limits and stacking.  (Doc. 152 at 3.)

For the reasons discussed in Section II.A.1.a., *supra*, the Court finds that Defendant GEICO has failed to demonstrate good cause for the issuance of a protective order limiting Ms. Nelson's testimony as Defendant has requested.  *Pearson*, 211 F.3d at 73; *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1190.  The questions Plaintiffs propose to ask Ms. Nelson are relevant to their extracontractual claims that, for several months, Defendant GEICO improperly refused to equalize and stack their UM/UIM coverage limits as a part of its general business practice.  (Doc. 1-1 ¶¶ 38-39, 148-49.)  Moreover, Plaintiffs' proposed questions are limited in number and scope and proportional to the needs of the case, in light of the subsidiary nature of these claims.  Fed. R. Civ. P. 26(b)(1).  The Court will therefore deny Defendant GEICO's motion for protective order as to Ms. Nelson's deposition testimony.

D.    <u>Defendant GEICO's Motion for Protective Order Limiting the Deposition Testimony of Ruben Garay, Ann Pelczar, and Mark Euziere (Doc. 148)</u>

In this motion, Defendant GEICO asks for a protective order limiting the deposition testimony of Ruben Garay, Ann Pelczar, and Mark Euziere to their knowledge of Plaintiffs' insurance policy with Defendant GEICO and their 2010 UIM claim.  (Doc. 148 at 3-4.)  More particularly, Defendant GEICO asks the Court to prohibit Plaintiffs from asking these witnesses questions about "the subject matter of Plaintiff[s'] Second and Third Sets of Discovery," arguing that such subject matter is irrelevant to the parties' claims and defenses.  (*Id.*)  Plaintiffs oppose Defendant GEICO's motion, arguing that they should be permitted to ask Mr. Garay (and presumably Ms. Pelczar) about "misrepresentation of coverage, how and why it occurred, and why GEICO permits or encourages sworn misrepresentations to its own insureds," as well as

"how often GEICO misrepresents coverage." (Doc. 152 at 5.)  Plaintiffs further argue that they should be permitted to ask Mr. Euziere, a Regional Liability Administrator who allegedly has "comprehensive knowledge of how claims should . . . be handled," about "the requirements of the equal consideration rule," how Defendant GEICO allegedly breaches its duties and obligations, its option form, whether representations of coverage in this case were improper, "the frequency with which GEICO misrepresented UM/UIM coverage limits, and how infrequently insureds contested such misrepresentations." (*Id.* at 6.)

For the reasons discussed in Section II.A.1.a., *supra*, the Court finds that Defendant GEICO has failed to demonstrate good cause for the issuance of a protective order limiting Mr. Garay's or Ms. Pelczar's testimony as Defendant GEICO has requested. *Pearson*, 211 F.3d at 73; *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1190.  The questions Plaintiffs propose to ask Mr. Garay and Ms. Pelczar are relevant to their extracontractual claims that, for several months, Defendant GEICO improperly refused to equalize and stack their UM/UIM coverage limits as a part of its general business practice. (Doc. 1-1 ¶¶ 38-39, 148-49.)  Moreover, these questions, although presently described in an argumentative manner that could well draw objections as to form, are appropriately limited in number and scope and proportional to the needs of the case, in light of the subsidiary nature of these claims. Fed. R. Civ. P. 26(b)(1).  The Court will therefore deny Defendant GEICO's motion for protective order as to Mr. Garay's and Ms. Pelczar's deposition testimony.

The Court likewise finds that Defendant GEICO has failed to demonstrate good cause for the issuance of a protective order limiting Mr. Euziere's testimony as Defendant GEICO has requested. *Pearson*, 211 F.3d at 73; *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1190.  The areas Plaintiffs seek to explore with Mr. Euziere, while more extensive and again currently

29

described in an argumentative manner, are nevertheless also relevant to Plaintiffs'
extracontractual claims and proportional to the needs of the case, and the Court will permit
Plaintiffs to ask them.  *See Ameri v. GEICO Gen. Ins. Co.*, 2015 WL 4461212, at *16 (D.N.M.
Jul. 13, 2015) (plaintiff "need not file a rule 30(b)(6) request to depose [employees of a
company] with personal knowledge of issues relevant to her case"); *Morales*, 229 F.R.D. at 663
(permitting "short deposition" of CEO who "may have personal knowledge regarding [business]
policies, authorization or ratification of [employee's] actions, and . . . record keeping").
However, the Court notes that because Plaintiffs have not noticed Mr. Euziere's deposition
pursuant to Rule 30(b)(6), his deposition will be limited to four hours unless the parties agree to
extend it.  (Doc. 78 at 2.)  For all of the above reasons, the Court will deny Defendant GEICO's
motion for protective order limiting Mr. Garay's, Ms. Pelczar's, and Mr. Euziere's deposition
testimony.

E.    Award of Expenses under Federal Rule of Civil Procedure 37

        The Court will not award expenses to either party as a result of Defendant GEICO's
motions for protective order.  Pursuant to Federal Rules of Civil Procedure 26 and 37, if a party's
motion for a protective order is granted, the Court must generally require the opposing party
and/or its counsel to pay the movant's reasonable expenses incurred in making the motion.  Fed.
R. Civ. P. 37(a)(5)(A); Fed. R. Civ. P. 26(c)(3) ("Rule 37(a)(5) applies to the award of expenses"
regarding motions for protective orders).  However, the Court must not require payment of such
expenses if, *inter alia*, the opposing party's position was "substantially justified," or "other
circumstances make an award of expenses unjust."   Fed. R. Civ. P. 37(a)(5)(A).  Similarly, Rule
37(a)(5)(B) provides that if a discovery motion is denied, the Court must generally award
expenses to the party opposing the motion, but again, not if "the motion was substantially

justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Finally, Rule 37(a)(5)(C) provides that "[i]f the motion is granted in part and denied in part, the court . . . *may* . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added).

In this case, some of each side's arguments have been successful and some have not. Each side has taken some positions that are substantially justified, and some that are without merit. Portions of the motions presented relatively complex legal issues, which were appropriately submitted to the Court for resolution. In these circumstances, an award of expenses to either party would be unjust and inappropriate under Rule 37(a)(5)(A) and (B), and the Court declines to exercise its discretion under Rule 37(a)(5)(C) to apportion expenses between the parties.

### III.  Conclusion

IT IS THEREFORE ORDERED AS FOLLOWS:

(1)    Defendant GEICO's Motion for Protective Order (Doc. 139) is GRANTED IN PART and DENIED IN PART as follows:

    (a)    as to Interrogatory No. 12, Requests for Production Nos. 15, 20, and 22, and Requests for Admission Nos. 1 through 11, Defendant GEICO's motion for a protective order is GRANTED;

    (b)    as to Interrogatory No. 13, Defendant GEICO's motion for a protective order is DENIED;

    (c)    as to Interrogatories Nos. 14, 16, and 17, and Requests for Production Nos. 12, 13, 17, 18, 19, and 21, Defendant GEICO's motion for a protective order is GRANTED IN PART and DENIED IN PART as further described herein; and,

      (d)    Defendant GEICO may produce documents as ordered herein subject to the stipulated Protective Order Regarding GEICO's Claimed Confidential Commercial Information (Doc. 121) if warranted;

(2)    former Defendant Government Employees' Motion for Protective Order (Doc. 140) is DENIED AS MOOT;

(3)    Defendant GEICO's Motion for Protective Order Limiting the Deposition Testimony of Karlyn Nelson (Doc. 147) is DENIED; and,

(4)    Defendant GEICO's Motion for Protective Order Limiting the Deposition Testimony of Ruben Garay, Ann Pelczar, and Mark Euziere (Doc. 148) is DENIED.

IT IS SO ORDERED.

_____

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE