IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIANA WILLIS *et al.*,

    Plaintiffs,

vs.                                                                                          Civ. No. 13-280 KG/KK

GEICO GENERAL INSURANCE COMPANY *et al.*,

    Defendants.

## SECOND ORDER REGARDING DISCOVERY MOTIONS

THIS MATTER comes before the Court on the following motions:  (1) Defendant GEICO General Insurance Company's ("GEICO") Motion to Compel Depositions (Doc. 157),[1] filed December 21, 2015; (2) Plaintiffs' Motion for Protective Order Concerning Disclosures by Mediator (Doc. 188), filed March 4, 2016; (3) Defendant GEICO's Motion to Allow Mediator to Testify Regarding Final Settlement Offer Numbers Only (Doc. 189), filed March 4, 2016; and, (4) Plaintiffs' Motion to Supplement Response to GEICO's Motions for Protective Order Documents Nos. 147 & 148 (Doc. 193), filed March 15, 2016.  The Court, having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, FINDS that:

(1)    Defendant GEICO's Motion to Compel Depositions (Doc. 157) should be GRANTED IN PART and DENIED IN PART;

(2)    Plaintiffs' Motion for Protective Order Concerning Disclosures by Mediator (Doc. 188) should be DENIED;

---

[1] Former Defendant Government Employees Insurance Company ("Government Employees") joined in this motion when it was filed.  (Doc. 157 at 1.)  However, the Court has since dismissed Government Employees from this action, and will therefore consider the motion to be Defendant GEICO's alone.  (Doc. 175.)

(3) Defendant GEICO's Motion to Allow Mediator to Testify Regarding Final Settlement Offer Numbers Only (Doc. 189) should be GRANTED; and,

(4) Plaintiffs' Motion to Supplement Response to GEICO's Motions for Protective Order Documents Nos. 147 & 148 (Doc. 193) should be DENIED AS MOOT.

## I. Background

Plaintiffs filed this lawsuit on February 6, 2013 in the Thirteenth Judicial District Court for the State of New Mexico, and Defendants removed it to this Court on March 22, 2013. (Docs. 1, 1-1.) In their complaint, Plaintiffs allege the following. On May 15, 2010, Joshua Kiscadon, while intoxicated, fleeing a crime scene, speeding, and driving on a suspended license, lost control of his vehicle and struck Plaintiff Diana Willis' vehicle, causing her serious bodily injury and property damage. (Doc. 1-1 ¶¶ 15-20.) Plaintiffs subsequently demanded policy limits from Mr. Kiscadon's insurer, Defendant GEICO, which Defendant GEICO paid. (*Id.* ¶¶ 32, 33.) Plaintiffs further demanded that Defendant GEICO, as their own uninsured/underinsured motorist ("UM/UIM") insurer, compensate them for their damages in excess of Mr. Kiscadon's policy limits. (*Id.* ¶¶ 35, 42, 53, 58.) Several months of communications between Plaintiffs' counsel and Defendant GEICO, including at a private mediation, failed to result in a mutually satisfactory resolution of Plaintiffs' UM/UIM claim. (*Id.* ¶¶ 59-120, 138-40.) Plaintiffs therefore filed this lawsuit, seeking to require Defendant GEICO to pay their UM/UIM claim in full. (*Id.*) Plaintiffs also seek extracontractual damages from Defendant GEICO based on allegations that it mishandled their UM/UIM claim as part of its

regular business practice. (*Id.* ¶¶ 59-137, 141-59.) At this time only Plaintiffs' extracontractual claims remain pending.[2]

Plaintiffs assert several different extracontractual claims against Defendants, *i.e.*, claims under the New Mexico Unfair Practices Act ("UPA"), N.M. Stat. Ann. § 57-12-1 *et seq.* and the New Mexico Trade Practices and Frauds Act, also called the Unfair Insurance Practices Act ("UIPA"), N.M. Stat. Ann. § 59A-16-1 *et seq.*, as well as tort claims for "insurance bad faith." (Doc. 1-1 at 22, 24, 26.) The claims share a common factual basis, however. As described in considerable detail in their complaint, Plaintiffs' grievances include Defendant GEICO's alleged misrepresentation and miscalculation of Plaintiffs' UM/UIM coverage limits for several months, and its alleged undervaluation of and delay in paying their 2010 UM/UIM claim for several years. (*Id.* at 6-7, 10-22.) Discovery in this case began in March 2015 (Doc. 69), and has generated a considerable number of disputes that the parties have been unable to resolve without the Court's assistance. Presently before the Court for resolution are the four (4) pending discovery motions listed above. (Docs. 157, 188-89, 193.)

## II. Analysis

A.  Defendant GEICO's Motion to Compel Depositions (Doc. 157)

In this motion, Defendant GEICO seeks to compel the depositions of attorneys John Howard and Geoffrey Romero, who represented Plaintiffs with respect to their 2010 UM/UIM claim before the filing of this lawsuit. (Doc. 157 at 9-10); *see* Fed. R. Civ. P. 37(a)(3)(B)(i) (party may move to compel witness to answer deposition questions). Mr. Howard no longer represents Plaintiffs, but Mr. Romero remains co-counsel of record for them in this action. (Doc. 157 at 10.) Defendant GEICO seeks to depose Mr. Howard and Mr. Romero regarding their

---

[2] The parties settled Plaintiffs' UM/UIM claim in September 2015. (Doc. 130 at 1.)

recollection of Defendant's "investigation and evaluation, the settlement negotiation, . . . the coverage issues raised by Plaintiffs' extracontractual allegations[, and] the handling of Plaintiffs' UM/UIM claim." (*Id.* at 12.) Defendant GEICO also wishes to explore Plaintiffs' counsel's "understanding, . . . impressions, and belief[s]" regarding these topics. (Doc. 170 at 7.) Plaintiffs oppose Defendant GEICO's motion, arguing that depositions of counsel are discouraged, that the depositions Defendant GEICO proposes to take are unnecessary because Defendant GEICO's employees already know what happened, and that to allow Defendant GEICO to ask Plaintiffs' counsel about their understanding, impressions, and beliefs will invade counsel's protected mental impressions.[3] (Doc. 161 at 4-11.)

The Eighth Circuit addressed the circumstances in which a party may depose an opposing party's trial counsel in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327-28 (8th Cir. 1986). The *Shelton* court noted that "[t]he practice of forcing trial counsel to testify as a witness . . . has long been discouraged," because it "causes the standards of the profession to suffer and . . . disrupt[s] the adversarial nature of our judicial system." *Id.* at 1327 (internal citations and quotation marks omitted). Thus, the court held that, although opposing trial counsel is not "absolutely immune from being deposed," such depositions

> should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Id.* (internal citation omitted). "The party seeking to take the deposition of opposing counsel bears the burden of establishing that the three factors are satisfied." *Archuleta v. City of Santa*

---

[3] Plaintiffs also argue that, in seeking to depose their counsel, Defendant GEICO is improperly trying to "mak[e] mediation transactions part of the evidentiary record." (Doc. 161 at 11-12.) The Court discusses the discoverability of information about the parties' pre-litigation mediation in Section II.B., *infra*.

*Fe*, 2005 WL 2313706, at *6 (D.N.M. Aug. 10, 2005) (citing *Boughton v. Cotter Corp.*, 65 F.3d 823, 831 n.10 (10th Cir. 1995)).

> The Tenth Circuit addressed *Shelton* in *Boughton*, stating that it
>
> approve[d] of the criteria set forth in *Shelton* . . . but at this time . . . need only make the more limited holding that ordinarily the trial court at least has the *discretion* under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria for deposition . . . are *not* met.

65 F.3d at 830 (emphasis in original); *see In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71 n.3 (2d Cir. 2003) (Sotomayor, J.) (*Boughton* "upheld [a] lower court ruling[] premised on *Shelton* . . . on the grounds that the ruling[ was] within the lower court's discretion to manage discovery under Rule 26."). However, the Tenth Circuit has since stated that "*Shelton* was adopted by this court in *Boughton*." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1111 n. 15 (10th Cir. 2001); *see also S.E.C. v. Goldstone*, 301 F.R.D. 593, 649 (D.N.M. 2014) ("In *Boughton* . . . the Tenth Circuit adopted *Shelton*['s] three-part test to determine whether a party can depose opposing counsel."); *Malcolm D. Smithson & Christine B. Smithson Trusts v. Amerada Hess Corp.*, 2007 WL 5685112, at *9 (D.N.M. Dec. 19, 2007) ("[T]he Court interprets *Boughton* . . . as adopting the *Shelton* . . . criteria.").

Defendant GEICO cites to an unpublished New Mexico Court of Appeals decision to support its position that this Court should compel Plaintiffs to make Mr. Howard and Mr. Romero available to be deposed. In *Coleman v. Hartford Insurance Cos.*, the court first noted that, like the Tenth Circuit, it "disfavor[s] depositions of a party's attorney and will allow them only in limited circumstances." 2014 WL 1314929, at *3 (N.M. App. Feb. 25, 2014). However, the *Coleman* court determined that the case before it "present[ed] such a circumstance." *Id.* Coleman "initiated this bad faith case against Hartford regarding the way Hartford handled her

5

claim." *Id.* at *2. "Coleman's complaint alleged that she provided medical records to Hartford," and that Hartford had no justification for its failure to pay her claim. *Id.* Hartford, conversely, contended that it had never received certain medical records from Coleman and "therefore could not complete [its] evaluation of the claim." *Id.* Coleman testified at deposition "that she had no personal knowledge as to the claims handling process with Hartford"; rather "the only people [who were] involved in the adjustment process," and had knowledge of the medical records Coleman claimed to have provided to Hartford, were Coleman's attorney and his two employees. *Id.* at *3.

> On these facts, the district court properly found that [Coleman's attorney and his two employees] became essential witnesses in the case and that testimony regarding their communications with Hartford and other parties regarding the handling of Coleman's UM/UIM claim would be necessary to Hartford's defenses.

*Id.*

Also informative is a recent decision in which the United States District Court for the District of Kansas, in another insurance bad faith case, prohibited the insurer from deposing the plaintiff's counsel about counsel's participation in the claims handling process. *Nelson v. Hardacre*, 312 F.R.D. 609, 612, 617-20 (D. Kan. 2016). The *Nelson* court applied the *Shelton* factors to reach this decision. *Id.* at 617-20. First, the court found that the insurer had "not met its burden to show no other means exists by which to obtain the information it seeks," because written communications between the plaintiff's counsel and the insurer's agents had already been produced, and "pointed discovery could have done much to fill in any blanks which [the insurer] found missing." *Id.* at 617. Second, the court found that the actions about which the insurer sought to depose counsel had "very little, if any, relevance," and that "the work product doctrine prevents inquiry into his legal theories and mental impressions." *Id.* at 618-19. Finally, the court

6

concluded that the insurer failed to explain why the information it sought was crucial to its case. *Id.* at 619.

After careful consideration of all of the foregoing, the Court will grant Defendant GEICO's motion in part. This case is more analogous to *Coleman*, which the Court finds persuasive, than to *Nelson*; and, Defendant GEICO has satisfied the *Shelton* test as to some of the information it seeks from Mr. Howard and Mr. Romero. First, Plaintiffs' counsel have information that Defendant GEICO cannot obtain by other means. *Shelton*, 805 F.2d at 1327. Virtually all of Defendant GEICO's handling of Plaintiffs' UM/UIM claim, as described in Plaintiffs' complaint, consists of what Plaintiffs' counsel told Defendant GEICO's employees, and what Defendant GEICO's employees told Plaintiffs' counsel. (Doc. 1-1 at 10-20.) This is consistent with the deposition testimony of Plaintiffs George and Diana Willis, that they personally had only minimal interactions with Defendant GEICO's employees regarding their claim. (Docs. 157-1, 157-2.) While Defendant GEICO does, presumably, know what its employees remember about their interactions with Plaintiffs' counsel, it does not know what Plaintiffs' counsel remember. Thus, to the extent that there is any disagreement between Plaintiffs' counsel and Defendant GEICO's employees about what happened—and the parties' pleadings suggest that there is considerable disagreement[4]—Defendant GEICO cannot know what Plaintiffs' counsel may say in attempting to prove that *their* allegations are correct, without deposing them.[5]

---

[4] (*Compare* Doc. 1-1 ¶¶ 60, 65-66, 68, 73-74, 76-81, 83-87, 89-92, 95-100, 102-03, 105, 109-10, 112-14, and 119-20 *with* Doc. 38 ¶¶ 60, 65-66, 68, 73-74, 76-81, 83-87, 89-92, 95-100, 102-03, 105, 109-10, 112-14, and 119-20.)

[5] If Plaintiffs' counsel and Defendant GEICO's employees had had substantially fewer interactions, it would likely be preferable for Defendant to seek information about these interactions by way of written discovery requests. *See Nelson*, 312 F.R.D. at 617. However, in the present matter, the very large number of relevant interactions renders this discovery method impracticable.

Also, there are at least three problems with relying on Plaintiffs' counsel's letters to Defendant GEICO's employees to supply this information. *Cf. Nelson*, 312 F.R.D. at 617. First, the letters do not constitute every relevant communication Plaintiffs' counsel and Defendant GEICO's employees exchanged; rather, Plaintiffs' counsel and Defendant's employees had a number of oral conversations as well. (Doc. 170 at 5-6.) Second, at his deposition, Defendant GEICO's adjuster was uncertain whether Plaintiffs' counsel's letters included all of the medical records allegedly attached to them. (Doc. 170-1 at 6-7.) Thus, as in *Coleman*, only Plaintiffs' counsel can testify to which records they actually attached to the letters. Finally, Defendant GEICO is entitled to discover whether and to what extent Plaintiffs' counsel can recall, authenticate, and attest to the contents of these letters at trial, which appear to both constitute and contain hearsay statements if offered against Defendant GEICO to prove the truth of the matters asserted.[6] Fed. R. Evid. 801(c) (out-of-court statement offered to prove truth of matter asserted is hearsay); (*see, e.g.*, Doc. 157-4 at 2-10, 13-14, 17-20.)

Plaintiffs argue that Defendant GEICO's employees can provide it with all of this information. (Doc. 161 at 5-8.) And indeed, if Defendant GEICO's employees could fully recall and testify to all of their oral conversations with Plaintiffs' counsel, *and* these employees could recall, authenticate, and verify all of Plaintiffs' counsel's letters, all of the events described therein, and all of the documents allegedly attached thereto, *and* Plaintiffs agreed not to dispute Defendant's employees' testimony in any way, then Plaintiffs' argument would be correct. There would be no need to depose Plaintiffs' counsel about their version of events, because

---

[6] Plaintiffs' current contention that they do not intend to offer their counsel's testimony to prove their claims does not end the inquiry. (Doc. 161 at 10.) *Inter alia*, Plaintiffs do not appear to have considered that their counsel's testimony may prove essential to get counsel's letters admitted into evidence, particularly if they are offered to prove the truth of matters asserted in them. Further, either Plaintiffs' counsel's testimony or their letters appear necessary to Plaintiffs' ability to prove at least some of their claims at trial.

Defendant GEICO's version of events would be both complete and undisputed. However, that hypothetical situation is very different from the actual circumstances of this case, in which Defendant GEICO's employees' recollection of relevant events is in fact incomplete and disputed.[7] In short, in light of the unique circumstances of this case, the Court finds that Defendant GEICO cannot obtain Plaintiffs' counsel's recollection, authentication, and verification of the very numerous interactions between them and Defendant GEICO's employees regarding Plaintiffs' 2010 UM/UIM claim without deposing them.

Turning to the second and third *Shelton* factors, the Court finds that Plaintiffs' counsel's factual recollection of how Defendant GEICO handled Plaintiffs' UM/UIM claim is centrally relevant to Plaintiffs' extracontractual claims, not privileged, and crucial to the preparation of Defendant GEICO's defense. *Shelton*, 805 F.2d at 1327. However, the Court further finds that Plaintiffs' counsel's "understanding," "impressions," and "belief[s]" about these events, and particularly about which of Defendant GEICO's actions they believed to be unlawful, are protected work product and are also not crucial to Defendant GEICO's preparation of its defense. (Doc. 170 at 7.) As the *Nelson* court noted, "the work product doctrine prevents inquiry into [counsel's] legal theories and mental impressions."[8] *Nelson*, 312 F.R.D. at 619; Fed. R. Civ. P. 26(b)(3)(B). Moreover, Defendant GEICO does not need to ask Plaintiffs' counsel which of its actions they believed to be unlawful. Plaintiffs have already provided Defendant GEICO with a

---

[7] For example, Defendant Bob Smith, the GEICO adjuster who first handled Plaintiffs' 2010 UM/UIM claim, in many instances did not recall receiving Plaintiffs' counsel's letters or the attachments to them, or the substance of the oral conversations they purport to memorialize. (Doc. 170-1 at 2-3, 5-7, 11, 15-16.) *See also* Note 4, *supra*.

[8] Defendant GEICO argues that the Court should require Plaintiffs to prove with greater specificity that their counsel's mental impressions are protected. (Doc. 170 at 9.) This argument is nonsensical in the context of depositions that have not yet begun. Plaintiffs obviously cannot show that their counsel's answers to specific deposition questions will include protected mental impressions without knowing what the questions will be.

reasonably detailed and comprehensive list of what they contend are its wrongful actions, (Doc. 157-3 at 2-4); and, they have also "retained expert witnesses to identify which of GEICO's actions and conduct" form the basis of their extracontractual claims. (Doc. 161 at 7.)

For all of the above reasons, the Court will grant Defendant GEICO's motion to compel the depositions of Mr. Howard and Mr. Romero in part. The Court will compel Plaintiffs to make Mr. Howard and Mr. Romero available for Defendant GEICO to depose regarding their personal recollection of the facts alleged in Plaintiffs' complaint, including Plaintiffs' counsel's letters and the matters described therein. However, the Court will not compel Mr. Howard or Mr. Romero to answer questions regarding their understanding, impressions, and beliefs about the legality and propriety of Defendant GEICO's conduct, which the work product doctrine protects.

B.  Plaintiffs' and Defendant GEICO's Cross-Motions regarding Disclosures by Mediator (Docs. 188, 190)

In these motions, the parties dispute whether mediator Mark Mowery should be allowed to disclose certain information about the parties' unsuccessful October 19, 2012 private mediation.[9] Plaintiffs contend that the Court should issue a protective order prohibiting Mr. Mowery from disclosing anything at all about the mediation, other than that the parties did not settle.[10] (Doc. 188 at 1-2.) Defendant GEICO, in contrast, proposes that Mr. Mowery should be

---

[9] Plaintiffs argue that Defendant GEICO seeks to *compel* Mr. Mowery to disclose certain information about the mediation. (Doc. 203 at 3.) In fact, however, Defendant GEICO's motion requests only that Mr. Mowery be *allowed* to make the disclosures in question. (Doc. 189 at 1; Doc. 190 at 1-2, 10.) The Court declines to read into Defendant GEICO's motion a request for relief that simply is not there.

[10] Plaintiffs also ask the Court to compel Mr. Mowery to disclose whether Defendant GEICO has already contacted him to request information about the mediation and what, if anything, he has already told Defendant GEICO. (Doc. 188 at 2-3.) However, Plaintiffs have indicated neither that Mr. Mowery has refused to provide this information to them, nor that they have subpoenaed it from him. As such, the Court will deny Plaintiffs' request as premature.

allowed to disclose only the amounts of the final settlement offers each side made at the mediation.[11] (Doc. 190 at 2-3.) For the following reasons, the Court will deny Plaintiffs' motion and grant Defendant GEICO's.

According to Federal Rule of Civil Procedure 26(c), the Court may issue a protective order "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A protective order may forbid or limit particular discovery, or otherwise control the terms on which it may be had. *Id.* Moreover, "[i]f a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2). The party seeking a protective order bears the burden of showing good cause for the order to issue. *Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir. 2000); *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009). The decision whether to grant a motion for a protective order is within the trial court's discretion. *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1195; *Nelson*, 312 F.R.D. at 613; *see Morales v. E.D. Etnyre & Co.*, 229 F.R.D. 661, 662 (D.N.M. 2005) ("Federal district courts have broad discretion over discovery.") (citing cases). The Court will consider the parties' cross-motions in light of these general principles.

Plaintiffs contend that the New Mexico Mediation Procedures Act ("NMMPA") governs the discoverability of information about the parties' mediation, while Defendant GEICO argues that it is unclear whether state or federal law applies. (Doc. 188 at 1-2; Doc. 190 at 3-4; Doc. 203 at 8-10.) Defendant GEICO agrees that, if state law applies, the NMMPA governs. (Doc. 190 at 4-6.) If federal law applies, however, Defendant GEICO contends that the Alternative

---

[11] According to Defendant GEICO, the parties dispute the amount of its final offer. (Doc. 190 at 6.)

Dispute Resolution Act ("ADRA"), 28 U.S.C. § 652, and this Court's Local Civil Rule 16.2(e) govern, and that there is no federal common law "mediation privilege." (*Id.* at 7-9.)

The Court need not determine whether state or federal law applies to this issue, because both permit the disclosure of the very limited information Defendant GEICO seeks. Under state law, the NMMPA provides that, "[e]xcept as otherwise provided in the [NMMPA] or by applicable judicial court rules, all mediation communications are confidential, and not subject to disclosure and shall not be used as evidence in any proceeding." N.M. Stat. Ann. § 44-7B-4. The statute then lists several exceptions to this general rule. N.M. Stat. Ann. § 44-7B-5. *Inter alia*,

> [m]ediation communications are not confidential pursuant to the [NMMPA] if they . . . are sought or offered to disprove a claim or complaint of professional misconduct or malpractice based on conduct during a mediation and filed against a mediation party or nonparty participant.

N.M. Stat. Ann. § 44-7B-5(A)(8).

In their complaint, Plaintiffs allege that

> [d]uring the course of the mediation, GEICO ultimately made a final offer of settlement commensurate with its own lowball evaluation of the claim. . . . At the mediation GEICO refused to consider payment of any amount beyond its original unreasonably low evaluation evaluation [sic], excluding property damages from its assessment of the measure of punitive damages.

(Doc. 1-1 ¶¶ 109, 110.) Plaintiffs contend that Defendant GEICO thereby committed the tort of insurance bad faith and also violated the UPA and UIPA. (*Id.* ¶ 137.) The Court finds that these allegations constitute claims of professional misconduct filed against Defendant GEICO, a mediation party, based on conduct during the mediation, *i.e.*, the making of an unreasonably low final settlement offer, and that Defendant GEICO seeks information about the parties' final settlement offers to disprove these claims, within the meaning of Section 44-7B-5(A)(8).

Plaintiffs argue that Section 44-7B-5(A)(8) applies only to legal malpractice actions. (Doc. 203 at 6.) The Court disagrees. First, by its plain language, the exception is *not* limited to legal malpractice actions, but rather applies more broadly to any claim of "professional misconduct or malpractice" committed during a mediation filed against any "mediation party or nonparty participant." N.M. Stat. Ann. § 44-7B-5(A)(8); *Warner v. Calvert*, 2011-NMCA-028, ¶ 12, 258 P.3d 1125, 1130 (N.M. App. 2011) (courts must "first examine the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different meaning was intended") (internal quotation marks omitted). The NMMPA defines a "mediation party" as "a person who participates in a mediation and whose agreement is necessary to resolve the dispute," and a "person" as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government or governmental subdivision, agency or instrumentality, public corporation or any other legal or commercial entity." N.M. Stat. Ann. § 44-7B-2(C), (G). It is therefore beyond cavil that Defendant GEICO is a "mediation party" within the meaning of Section 44-7B-5(A)(8). Then, because the NMMPA does not define the term "professional misconduct," the Court must give it its ordinary meaning, *Warner*, 2011-NMCA-028, ¶ 12, 258 P.3d at 1130, *i.e.*, misconduct "relating to a job that requires special education, training, or skill." http://www.merriam-webster.com/dictionary/professional. The Court finds that an insurer's bad faith participation in a mediation, such as Plaintiffs allege here, falls within the term's ordinary meaning.[12]

---

[12] The adjuster(s) who presumably acted for Defendant GEICO at the mediation were certainly performing a job that requires special education, training, or skill. By law, licensed insurance adjusters in New Mexico must possess specified minimum qualifications, including a "good business reputation," and "experience," "special education," or "training" in handling insurance claims. N.M. Stat. Ann. § 59A-13-4(A); *see also* 2016 N.M. Laws Ch. 89 § 54 (licensed insurance adjusters must pass an examination and attend continuing education).

Further, the reference in Section 44-7B-5(A)(8) to "claim[s] or complaint[s] of professional misconduct or malpractice" tracks Section 6(a)(6) of the Uniform Mediation Act ("UMA"); and, the UMA's drafters' comments indicate that this exception applies to "lawyers *and fiduciaries*."  Unif. Mediation Act § 6(a)(6) at 30 (2003) (emphasis added), at http://uniformlaws.org/Act.aspx?title=Mediation%20Act.  In New Mexico, an insurer is considered a "fiduciary" when dealing with its insured in matters regarding the performance of the insurance contract. *Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 1999-NMSC-006, ¶ 37, 976 P.2d 1, 15 (N.M. 1999).  Thus, in the present matter, Defendant GEICO was acting as a fiduciary to whom Section 6(a)(6) of the UMA, and thus Section 44-7B-5(A)(8), should apply.

The decisions Plaintiffs cite to the contrary are inapposite, because they either apply statutes that lack an exception like Section 44-7B-5(A)(8), or do not involve claims or complaints of professional misconduct or malpractice based on conduct during the mediation. *See, e.g., Cassel v. Super. Ct. of Los Angeles Cnty.*, 244 P.3d 1080, 1094 (Cal. 2011) (noting that the mediation confidentiality statutes at issue included no exception for legal malpractice claims); *Princeton Ins. Co. v. Vergano*, 883 A.2d 44, 64-65 (Del. Ch. 2005) (noting that defendants relied on plaintiff's alleged fraudulent misrepresentations at mediation in seeking admission of mediator's testimony).  Moreover, Plaintiffs have taken fundamentally inconsistent positions by arguing that the amount of Defendant GEICO's final settlement offer at mediation is confidential, while also describing that amount in their complaint.[13]  If Plaintiffs were correct

---

[13] Although Plaintiffs did not name the actual dollar amount of Defendant GEICO's final offer at mediation in their complaint, they might as well have done so.  Both the complaint and subsequent discovery precisely quantify the alleged "lowball evaluation of the claim" with which Plaintiffs allege Defendant GEICO's final offer was "commensurate."  (Doc. 1-1 ¶¶ 109-10; *see id.* ¶¶ 75, 79, 81; Doc. 170-1 at 8, 10, 20.)  Plaintiffs' phrasing is coy but their meaning is clear.

14

that the amount of Defendant GEICO's final settlement offer at mediation is confidential, then their description of this amount in a publicly filed document would clearly violate the NMMPA and would have to be stricken. *See Alfieri v. Solomon*, 365 P.3d 99, 105, 112 (Or. 2015) (allegations in plaintiff's complaint that disclosed confidential mediation communications were properly stricken). For all of the above reasons, the Court finds that information about the amount of Defendant GEICO's final settlement offer at mediation is not confidential under the NMMPA, because it is sought to disprove Plaintiffs' claims of professional misconduct against Defendant GEICO based on its conduct at the mediation.

The discoverability of this information is at least as clear under federal law. First, as Defendant GEICO observes, the Tenth Circuit has not recognized a federal common law "mediation privilege." *Gebremedhin v. Am. Fam. Mut. Ins. Co.*, 2015 WL 4272716, at *8 n.5 (D. Colo. Jul. 15, 2015); *Bird v. Regents of N.M. St. Univ.*, 2010 WL 8973917, at *4 (D.N.M. Jun. 15, 2010); *but see Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1180 (C.D. Cal. 1998) (adopting federal common law mediation privilege). Plaintiffs have made no attempt to address the complex factors a court must consider before adopting a new federal common law privilege, *see Folb*, 16 F. Supp. 2d at 1171; as such, and "absent direction from the Tenth Circuit, this [C]ourt will not imply the existence" of one. *Gebremedhin*, 2015 WL 4272716, at *8 n.5.

Then, it is true that the ADRA directs federal district courts to "provide for the confidentiality of . . . alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications" by local rule. 28 U.S.C. § 652(d). However, this provision appears to apply only to "alternative dispute resolution processes under [the ADRA]," *i.e.*, to alternative dispute resolution processes that the federal district courts provide to

litigants appearing before them.  28 U.S.C.  § 652(a), (d).  Thus, this Court's Local Rule regarding the confidentiality of settlement conferences, which was adopted in compliance with Section 652(d) of the ADRA, applies only to settlement conferences held by a "judge."  D.N.M. LR-Civ. 16.2(a), (e); *see also Clark v. Stapleton Corp.*, 957 F.2d 745, 746 (10th Cir. 1992) (statement made at court-sponsored appellate settlement conference was confidential pursuant to Tenth Circuit Rule 33.1).

The mediation at issue here was *not* provided by this or any other federal court, and was not conducted by a judge.  Rather, it was undertaken independently and conducted by a private attorney well before this lawsuit was filed.  (Doc. 190 at 2.)  As such, the confidentiality provisions of the ADRA and Local Rule 16.2 simply do not apply to it.  28 U.S.C. § 652(a), (d); D.N.M. LR-Civ. 16.2(a), (e).  Nor have Plaintiffs identified any other federal case, statute, or rule that prohibits Mr. Mowery from disclosing the parties' final offers at the mediation, as Defendant GEICO proposes.[14]  For the foregoing reasons, because Plaintiffs have directly and deliberately put at issue the nature and reasonableness of the parties' final positions at mediation, and because the parties dispute the amount of Defendant GEICO's final offer, the Court will grant Defendant GEICO's motion to allow Mr. Mowery to disclose only the amount of both parties' final settlement offers at the mediation, and will deny Plaintiffs' motion for a protective order prohibiting him from doing so.[15]

---

[14] Plaintiffs do cite to Federal Rule of Evidence 408 for this proposition.  (Doc. 188 at 2.)  However, Rule 408 addresses only the admissibility, and not the discoverability, of evidence, and so does not support Plaintiffs' position.  Fed. R. Civ. P. 408; *see* Fed. R. Civ. P. 26(b)(1) ("Information . . . need not be admissible in evidence to be discoverable.").

[15] Plaintiffs' motion for a protective order prohibiting Mr. Mowery from disclosing any other information about the mediation is moot, because Defendant GEICO has conceded that such information should not be disclosed.  (Doc. 190 at 2-3; Doc. 194 at 4.)

C.  Plaintiffs' Motion to Supplement Response to GEICO's Motions for Protective Order Documents Nos. 147 & 148 (Doc. 193)

In this motion, Plaintiffs seek leave to supplement their response in opposition to Defendant GEICO's Motion for Protective Order Limiting the Deposition Testimony of Karlyn Nelson (Doc. 147) and Motion for Protective Order Limiting the Deposition Testimony of Ruben Garay, Ann Pelczar, and Mark Euziere (Doc. 148), to address the supplemental disclosures Defendant GEICO provided to them on March 10, 2016.  (Doc. 193 at 1-2; Doc. 193-1 at 4.) However, the Court has already denied the motions for protective order in question.  (Doc. 202 at 32.)  As such, Plaintiffs' motion to supplement their response in opposition to these motions is moot.

D.  Award of Expenses under Federal Rule of Civil Procedure 37

The Court will not award expenses to either party as a result of the parties' pending discovery motions.  Pursuant to Federal Rule of Civil Procedure 37, if a party's motion to compel or for protective order is granted, the Court must generally require the opposing party and/or its counsel to pay the movant's reasonable expenses incurred in making the motion.  Fed. R. Civ. P. 37(a)(5)(A); Fed. R. Civ. P. 26(c)(3).  However, the Court must not require payment of such expenses if, *inter alia*, "the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).  Similarly, Rule 37(a)(5)(B) provides that if a motion to compel is denied, the Court must generally award expenses to the party opposing the motion, but again, not if "the motion was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(B).  Finally, Rule 37(a)(5)(C) provides that "[i]f the motion is

granted in part and denied in part, the court . . . *may* . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added).

Here, some of each party's arguments have been successful and some have not. Each party has taken some positions that are substantially justified, and some that are without merit. Portions of the motions presented relatively complex and/or significant legal issues, which were appropriately submitted to the Court for resolution. In these circumstances, an award of expenses to either party would be unjust and inappropriate under Rule 37(a)(5)(A) and (B), and the Court declines to exercise its discretion under Rule 37(a)(5)(C) to apportion expenses between the parties.

### III. Conclusion

IT IS THEREFORE ORDERED AS FOLLOWS:

(1) Defendant GEICO's Motion to Compel Depositions (Doc. 157) is GRANTED IN PART and DENIED IN PART. Plaintiffs are to make John Howard and Geoffrey Romero available for Defendant GEICO to depose regarding their personal knowledge of the facts alleged in Plaintiffs' complaint, including Plaintiffs' counsel's letters and the matters described therein. However, Mr. Howard's and Mr. Romero's understanding, impressions, and beliefs about the legality and propriety of Defendant GEICO's conduct are protected work product, about which they are not required to answer questions;

(2) Plaintiffs' Motion for Protective Order Concerning Disclosures by Mediator (Doc. 188) is DENIED;

(3) Defendant GEICO's Motion to Allow Mediator to Testify Regarding Final Settlement Offer Numbers Only (Doc. 189) is GRANTED; and,

(4)     Plaintiffs' Motion to Supplement Response to GEICO's Motions for Protective Order Documents Nos. 147 & 148 (Doc. 193) is DENIED AS MOOT.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE